STATE OF NEBRASKA, EX REL. LORENZO CROUNSE, V. JOSEPH S. BARTLEY, STATE TREASURER.

FILED MAY 2, 1894.     No. 6711.

1. **Permanent School Fund**: LOANS: STATE OFFICERS.     By section 1, article 8, of the state constitution the sole power to manage, loan, and invest the permanent school funds of the state is lodged with a board composed of the governor, secretary of state, treasurer, attorney general, and commissioner of public lands and buildings; and said board cannot be deprived of its functions by legislative enactment, nor can the legislature confer authority upon a single member of said board, or any other person, to invest any portion of said trust funds.

2. **Constitutional Law**: SCHOOL FUND: STATE TREASURER. Section 25, chapter 80, of the Compiled Statutes of 1893, in so far as it attempts to authorize the state treasurer alone to invest moneys in his hands belonging to the permanent educational funds of the state, contravenes section 1, article 8, of the constitution, and is therefore inoperative.

ORIGINAL application for *mandamus.*

*George H. Hastings, Attorney General,* for relator cited: *In re State Warrants,* 25 Neb., 659; *Storm v. Waddell,* 2 Sandford Ch. [N. Y.], 544; *Hall v. County Commissioners of Middlesex,* 10 Allen [Mass], 102; *Jennings v. Davis,* 31 Conn., 139.

*John H. Ames, contra.*

NORVAL, C. J.

This is an application for a *mandamus* by the state, on the relation of Lorenzo Crounse, against Joseph S. Bartley to compel respondent, as state treasurer, to pay relator, out of moneys belonging to the permanent school fund, the amount due him on a certain warrant issued by the auditor upon the state general fund.   The material allegations of the petition are substantially as follows: On the 17th day of January, 1894, the relator was the owner and holder of a state warrant duly and legally drawn in his favor by the auditor of public accounts against the general funds of the state for the sum of $10, for office supplies and stationery, which warrant was issued in pursuance of an appropriation made by the state legislature of 1893, and was secured by the levy of a tax for its payment.   Although on the date aforesaid said warrant was presented to the respondent, as state treasurer, and payment thereof demanded, yet respondent declined to pay the same out of the general fund, for the reason there was no money in said fund from which payment could be made.   Thereupon relator demanded that said warrant be paid from moneys in the state treasury belonging to the permanent school fund, as provided by statute.   The respondent declined to comply with said demand and gave the relator the following reasons in writing for such refusal, to-wit:

" *Gov. Lorenzo Crounse, Chairman of the Board of Educational Lands and Funds*—SIR: Section 1, article 8, of the constitution of the state of Nebraska provides that the governor, secretary of state, treasurer, attorney general, and commissioner of public lands and buildings shall, under the direction of the legislature, constitute a board of commissioners for the investment of the school funds in such manner as may be prescribed by law.   In the Compiled Statutes of 1887, chapter 80, section 1 of article 1, provision is made for the commissioners created by section 1, article 8, of the constitution to invest the school fund.

"Section 25 of article 1, chapter 80, of the said statute of 1887 says that the said board of commissioners above referred to shall, at regular meetings, make the necessary orders for the investment of the funds. The legislature of this state in 1891 amended section 25 of article 1, chapter 80, Statutes of 1887. It now provides : ' That said board of commissioners shall at regular meetings provide for the investment of said funds,' and in addition to United States and state securities and registered county bonds it makes state warrants proper securities. The legislature, in my opinion, could not relieve the commissioners of their responsibility, and I do not believe it was the intention to do so in chapter 48, Session Laws of 1891. My idea is, the legislature, when the commissioners at a regular meeting passed upon certain securities, including state warrants, and approved them, made it the duty of the treasurer to invest the funds in the securities so approved. The board of commissioners should, in my judgment, do three things : First, they should ascertain that there is a levy behind the warrants presented ; second, that they are regularly issued, and on a proper appropriation ; third, that the party presenting them is the rightful owner. Having ascertained these facts, it is then the duty of the commissioners, under the law, to direct the treasurer, by resolution, to purchase the warrants. To do otherwise is to give the treasurer privileges which I do not think he is entitled to. In view of the action taken by the board to-day in refusing my request for authority to place the warrants now on hand in the school fund, I shall be obliged to discontinue the purchase of warrants until the question is decided by the supreme court, which I trust will be done in a few days.

"Your obedient servant,          J. S. BARTLEY,

"*State Treasurer.*"

The petition also avers that while the governor, secretary of state, treasurer, commissioner of public lands and buildings, and attorney general are made a board for the sale,

leasing, and general management of all lands and funds set apart for educational purposes, and for the investment of the school funds in such manner as may be prescribed by law, yet neither the constitution, nor the act of the legislature relating to the investment of the permanent school funds, contemplated that said board should make an order directing the investment of moneys in the permanent school fund in state warrants issued in pursuance of an appropriation regularly made and secured by the levy of a tax for their payment when such warrants have been duly presented for payment and there is no money in the proper fund to pay the same.

The petition contains the further allegation that the respondent had sufficient money in his hands, as state treasurer, to the credit of the permanent school fund to pay relator's warrant when the same was presented for payment as aforesaid.

The respondent has interposed a demurrer to the petition on the following grounds: 1. That it does not state facts sufficient to constitute a cause of action.   2. That the provisions of the statute directing the investment of the permanent school funds in state warrants is unconstitutional and void.

The first question argued in the brief of counsel is whether or not warrants upon the state treasury issued by the auditor of public accounts in pursuance of a legislative appropriation are "state securities," within the meaning of section 9, article 8, of the state constitution, which declares that "all funds belonging to the state for educational purposes, the interest and income whereof only are to be used, shall be deemed trust funds held by the state, and the state shall supply all losses thereof that may in any manner accrue, so that the same shall remain forever inviolate and undiminished; and shall not be invested or loaned except on United States or state securities, or registered county bonds of this state; and such funds, with the

interest and income thereof, are hereby solemnly pledged for the purposes for which they are granted and set apart, and shall not be transferred to any other fund for other uses." The provisions of the foregoing section have been frequently before this court for interpretation, and in an opinion delivered by REESE, C. J., in *Re State Warrants*, 25 Neb., 659, it was held that state warrants drawn by the auditor upon the state treasury in pursuance of an appropriation regularly made by the legislature, and secured by a levy of taxes for their payment, are "state securities" within the meaning of the above quoted section of the constitution.

Both parties in the briefs, and at the bar, have ably discussed the proposition whether or not the decision to which reference has already been made correctly interprets the constitutional provision which we have quoted; but inasmuch as the respondent did not, at the time he declined to purchase or pay the warrant in question, place his refusal on the ground that such warrant was not a state security, the court does not now feel called upon to examine anew the question argued by counsel, or to venture an opinion upon the subject; nor is it necessary to do so, since the writ must be denied on the ground hereinafter stated.

Assuming that state general fund warrants are "state securities" in the sense in which that term is used in the constitution, the question is fairly presented for consideration, was it the duty of the respondent to have invested any portion of the permanent school fund in relator's warrant? Section 25, chapter 80, Compiled Statutes, 1893, is in the following language:

"Sec. 25. The said board shall, at their regular meetings, make the necessary orders for the investment of the principal of the fund derived from the sale of said lands then in the treasury, but none of said funds shall be invested or loaned except on United States or state securities and registered county bonds; *Provided*, That when any

state warrants issued in pursuance of an appropriation made by the legislature, and secured by the levy of a tax for its payment, shall be presented to the state treasurer for payment, and there shall not be any money in the proper fund to pay said warrant, the state treasurer shall pay the amount due on said warrant from any funds in the state treasury belonging to the permanent school fund, and shall hold said warrant as an investment of said permanent school fund, and shall stamp and sign said warrant as provided in section eleven (11) of article two (2) of chapter eighty (80) of the Compiled Statutes of 1887."

If the foregoing is a constitutional or valid enactment, then the duty to invest moneys belonging to the permanent school fund of the state in state warrants devolves upon the state treasurer, and not upon the board of educational lands and funds. The contention of the respondent is that the proviso clause of said section 25 contravenes section 1, article 8, of the constitution, which declares that "the governor, secretary of state, treasurer, attorney general, and commissioner of public lands and buildings shall, under the direction of the legislature, constitute a board of commissioners for the sale, leasing, and general management of all lands and funds set apart for educational purposes, and for the investment of school funds in such manner as may be prescribed by law." By this provision the power to sell, lease, and manage the educational lands of the state is conferred upon a distinct board, composed of the state treasurer and four other state officers. Likewise, upon the same board the constitution has placed the duty of investing the permanent school fund of the state. The authority thus conferred upon the board of commissioners, or board of educational lands and funds, as it is usually called, the legislature is powerless to take away. The legislature may, by statute, provide upon what terms the educational lands shall be leased or sold, yet it cannot empower the governor, or any other state officer alone, to sell or lease such lands.

So the legislature may, by statute, prescribe the mode or manner in which the permanent school fund shall be invested in the securities enumerated in the constitution; but it has no power to relieve the board created by said section 1 of article 8 of the duty of making such investment; nor can it authorize any other board or person to invest said funds. It will be observed that by said section 25 of chapter 80 the legislature has attempted to direct that the state treasurer alone, and without any action on the part of the board of educational lands and funds, shall invest the moneys arising from the sale of lands set apart for educational purposes in state warrants issued in pursuance of a legislative appropriation, and secured by a tax levy, in case there shall be no money in the proper fund to pay the same. As regards the investment of school funds in state warrants, the board is, by this statute, relieved of all responsibility, duty, and discretion, and to the extent that such funds are so invested it is deprived of its constitutional functions. If the statute under consideration can be upheld, then there is nothing to prevent the legislature from empowering the state treasurer, without any action of the board of educational lands and funds to purchase for the permanent school fund registered county bonds of this state, or United States securities; and if the legislature may do this, it may confer upon the superintendent of public instruction, or any other state officer, the authority to invest the permanent school funds in these securities. Clearly, the framers of the constitution never intended that the duty of loaning or investing any portion of these funds should be performed by the state treasurer alone, without any directions from the board of which he is a member. The constitution has, in plain and unmistakable language, clothed the governor and four other state officers, as a board, with the power to invest the educational funds of the state, and the same instrument has designated the kinds of securities in which said funds shall be invested, and the legislature is powerless to change

the same.     It follows, from the views above expressed, that the statute which we have had under consideration, in so far as it attempts to confer authority upon the state treasurer to invest the permanent school fund in state warrants, contravenes section 1, article 8, of the constitution, and is, therefore, inoperative.

In the brief of the attorney general it is said: "It was never intended that this board of commissioners should remain in constant and continuous session from January 1 to December 31 of each year in order to pass upon such warrants presented for payment at the office of the state treasurer, and make orders for the payment of the same from the permanent school fund." The construction we have placed upon the constitution will not have the effect outlined by the attorney general. It is the duty of the board charged with the management and control of the school funds to determine when, and in what sums, said funds shall be invested, as well as what securities of the kinds authorized by the fundamental law shall be purchased, and the price that shall be paid for the same. When the board has so determined and ordered, it may, by resolution entered upon the record of its proceedings, authorize and direct the state treasurer to pay out the money therefor. It may, prior to the purchase, examine the particular security offered for sale, if deemed desirable and expedient; but it is not indispensable that it should do so. The board may direct the treasurer, or any other member of the board, to do that. For the reasons stated we are all of the opinion that the writ should be denied, and it is so ordered.

WRIT DENIED.