STATE OF NEBRASKA, EX REL. STULL BROTHERS, V. JOSEPH S. BARTLEY, STATE TREASURER.

FILED JUNE 26, 1894. No. 6953.

1. **Statutes: CONSTITUTIONAL LAW.** Courts will not hesitate to declare invalid acts of the legislature when found to be in substantial conflict with the fundamental law of the state.

2. ———: ———. The fact that a statute is within the letter of the constitution is not sufficient. It must also be in substantial compliance with the spirit and purpose thereof.

3. ———: ———. An act which violates the true meaning and intent of the constitution and is an evasion of its general express or plainly implied purpose is as clearly void as if in express terms prohibited.

4. **Constitutional Law:** PERMANENT SCHOOL FUND: TRANSFER TO OTHER FUND. The prohibition of section 9 of article 8 of the constitution, against the transfer of the permanent school fund to any other fund, is an express limitation upon the powers of the legislature; and the restraint thus imposed cannot be disregarded upon the pretense of a supposed necessity resulting from a change of conditions, or in deference to the judgment of the legislature.

5. ——: TRANSFER OF FUNDS: STATE TREASURER. By the act of 1891, amendatory of section 25, article 1, chapter 80, Compiled Statutes, it was provided that the state treasurer should pay warrants drawn against other funds out of the permanent school fund, and hold them as an investment of the permanent school fund. *Held,* To contemplate a transfer of that fund to other funds, and, therefore, in conflict with section 9, article 8, of the constitution.

6. **Permanent School Fund.** By the provision of the constitution above cited the state is made the trustee of the permanent school fund.

7. ——: INVESTMENT IN STATE WARRANTS. If, as trustee for said fund, the state desires to invest the same in state warrants, it must do so on terms of equality with other investors, and cannot enforce the sale to it by holders of such securities.

8. **State Treasurer:** LIABILITY FOR TRANSFER OF FUNDS. An act of the legislature for the transfer of the permanent school fund to the general fund of the state is no protection to the treasurer, and the latter is liable to the school fund for all money disbursed in pursuance of such an act.

9. ——: DUTY TO REGISTER WARRANTS. It is the duty of the treasurer, on demand of the holder, to register state warrants in the order presented, when not paid for want of funds.

10. ——: WARRANTS ON GENERAL FUND: RIGHTS OF HOLDERS. The holder of general fund warrants is not required to receive in payment thereof money known to belong to the permanent school fund, where such payment would amount to a misappropriation of such fund by the treasurer.

ORIGINAL application for *mandamus.*

*C. C. Flansburg,* for relators.

*George H. Hastings, Attorney General,* for respondent.

Post, J.

This is an original application for a writ of *mandamus* to require the respondent, as state treasurer, to register certain general fund warrants, and is submitted upon the following stipulation:

"It is hereby stipulated and agreed by and between the parties hereto, for the purpose of this case, and as the facts upon which the same is to be determined, that William Stull and Louis Stull are partners doing business under the firm name of Stull Bros., in the city of Lincoln, Nebraska; that the respondent is the duly elected, qualified, and acting treasurer of the state of Nebraska, and has been such ever since about the 14th day of January, 1893; that by the proper officers, and under the authority of law, there was duly and regularly issued the state warrants in the plaintiff's petition set forth, payable out of the general fund of the state of Nebraska, delivered to the persons in whose favor they were drawn, as in said petition set forth, and that said persons duly indorsed their names upon the back of said warrants and sold and delivered them to the said Stull Bros. for the amount of the face of the warrants and a premium of one per cent over and above their face value; that the said Stull Bros., prior to the 14th day of May, 1894, purchased all of the said warrants in the said petition set forth, as hereinbefore stipulated, and the same were made payable to the order of said Stull Bros., by indorsement, and thereupon the said Stull Bros., on the said 14th day of May, became and were the legal holders and owners of the said warrants, and still hold and own the same; that on the 14th day of May, aforesaid, the said Stull Bros. duly presented the warrants, in their petition described, to the respondent Joseph S. Bartley at the state treasury in the city of Lincoln; that at said time the said Stull Bros. inquired of the said Joseph S. Bartley if there was any money in the general fund upon which said warrants were drawn for

the payment of the same, and the said Joseph S. Bartley replied that there was no money in the said general fund for their payment, but at the same time offered to pay to said Stull Bros. the face of said warrants out of the moneys belonging to the permanent school fund of the state of Nebraska, under and by virtue of the authority of a resolution passed by the board of commissioners for the sale, leasing, and general management of all lands and funds set apart for educational purposes, and for the investment of school funds; that thereupon the said Stull Bros. declined to accept the face of said warrants, and upon learning that there was no money in the general fund of said state for the payment of said warrants, demanded that the same be registered for payment; that the said state treasurer (respondent herein, Joseph S. Bartley) refused to register the same, but offered to pay the face of said warrants to the said Stull Bros. and hold the same as an investment for the permanent school fund, under the instructions of the said resolution heretofore referred to; that there was in fact no money in the general fund for the payment of the said warrants, and is not at the present time, and upon the refusal of the said Stull Bros. to accept the amount of the face of said warrants and deliver them over to the treasurer as an investment of the school fund aforesaid, the said Joseph S. Bartley, treasurer as aforesaid, refused to register the same; that on the 10th day of May, 1894, at the regular meeting, the board of educational lands and funds duly passed and adopted a resolution authorizing the investment of the sum of $250,000 in current unregistered warrants of the state, a copy of which said resolution is hereto attached, marked 'A'; that said warrants, and all of them, were duly issued in pursuance of an appropriation duly made and secured by the levy of tax for their payment."

The resolution above referred to is in the following language:

"*Resolved*, That the sum of two hundred thousand dollars of the permanent school fund of the state of Nebraska, or as much thereof as may be necessary, be, and hereby is, set apart from which to pay outstanding warrants drawn upon the general fund, which warrants are registered and bearing numbers from Nos. 13292 to 16000, inclusive, together with accrued interest, it being determined by this board that said warrants are drawn in pursuance of an appropriation made by the legislature and secured by the levy of a tax for their payment, and therefore are state securities; and the state treasurer is instructed to at once notify the several parties in whose names said warrants are registered of his readiness and purpose to pay said warrants, so that interest on the same shall cease, as provided in chapter 93 of the Compiled Statutes of Nebraska, and when so paid the warrants shall be held by the treasurer as an investment of the permanent school fund, and shall be stamped and signed as provided by law.

" *Resolved, also,* That the further sum of two hundred and fifty thousand dollars of the permanent school fund of the state, or as much thereof as may be necessary, be, and is hereby, set apart from which to pay current unregistered warrants already drawn, as well as those which may hereafter be drawn, against the general fund under appropriations made at the last legislature, it being determined by this board that such appropriations are secured by a levy of tax for their payment; and the state treasurer is hereby directed to pay such warrants as they may be presented at the state treasury, and stamp, sign, and hold the same as an investment of the permanent school fund, as provided by statute.

" *Resolved, further*, That the state treasurer, a member of this board, be, and hereby is, empowered to act in its behalf in determining any questions as to the genuineness and ownership of any and all warrants presented under the foregoing two resolutions, and when in doubt he will

refer the matter to the chairman, to be submitted to the board for its decision."

Two questions are presented by the facts stated, viz.: First—Does the foregoing resolution contemplate a transfer of a part of the permanent school fund to the general fund of the state within the prohibition of section 9, article 8, of the constitution? Second—Conceding the action of the state board to be in effect a transfer *pro tanto* of the permanent school fund, and, therefore, violative of the constitution, will the relators be heard in this action to complain, inasmuch as the respondent offers to pay their warrants in full? The section of the constitution above referred to reads as follows: "All funds belonging to the state for educational purposes, the interest and income whereof only are to be used, shall be deemed trust funds held by the state, and the state shall supply all losses thereof that may in any manner accrue, so that the same shall remain forever inviolate and undiminished; and shall not be invested or loaned except on United States or state securities, or registered county bonds of this state; and such funds, with the interest and income thereof, are hereby solemnly pledged for the purposes for which they are granted and set apart, and shall not be transferred to any other fund for other uses." By section 25, article 1, of chapter 80, Compiled Statutes, as amended in 1891, it is provided that the board of educational lands and funds shall, at their regular meetings, make the necessary orders for the investment of the principal of the fund derived from the school lands of the state in United States or state securities and registered county bonds; "*Provided*, That when any state warrant issued in pursuance of an appropriation made by the legislature, and secured by the levy of a tax for its payment, shall be presented to the state treasurer for payment, and there shall not be money in the proper fund to pay said warrant, the state treasurer shall pay the amount due on said warrant from any funds in the state treasury belonging

to the permanent school fund, and shall hold said warrant as an investment of said permanent school fund," etc.

It is clear that by the foregoing resolution the state board intended to give effect to this statute. The real controversy therefore is with respect to the validity of the act of 1891, having for its object the investment of the permanent school fund. In *State v. Bartley*, 40 Neb., 298, that act was before us, where it was held that in so far as it was sought thereby to confer upon the treasurer alone authority to invest the permanent school fund, it is in conflict with the provisions of section 1, article 8, of the constitution. We are constrained to hold, after a careful consideration of the subject, that said act provides in substance for a transfer to the general fund of the permanent school fund of the state, and is, therefore, in conflict also with the section of the constitution above set out. It is a well settled and salutary rule that nothing but a clear and manifest violation of the constitution will justify the judicial annulment of the legislative will. It is, however, quite as well established that courts will not hesitate to condemn acts when found to be in substantial conflict with the fundamental law of the land. An elementary rule of construction is that an act which violates the true meaning and intent of the constitution is so much within its prohibition as if it were a violation of the strict letter thereof; and an act in evasion of the constitution, as properly interpreted and understood, and frustrating its general, express, or plainly implied purpose, is as clearly void as if in express terms forbidden. (*People v. Allen*, 42 N. Y., 404; *People v. Albertson*, 55 N. Y., 50; *Wenzler v. People*, 58 N. Y., 516; *District Court Case*, 34 O. St., 440; *People v. Parks*, 58 Cal., 635.)

That no adequate provision is made for the profitable investment of our rapidly increasing permanent school fund is a fact greatly to be deplored; but the provision against the transfer of that fund is an express limitation

upon the power of the legislature; and a disregard of the restraint thus imposed cannot be sanctioned upon any pretense of a supposed necessity resulting from a change of conditions or in deference to the judgment of the legislature. We shall not argue to prove that an act which provides for the defraying of current expenses of the state, and the enforced payment of outstanding general fund warrants from the permanent school fund, is a transfer of that fund. The fact that such a transaction is by the legislature denominated an investment is wholly immaterial. Suppose the declared purpose of the act had been to use the fund in question for payment of salaries of the executive and judicial officers of the state and members of the legislature. Who can doubt that it would have been a flagrant violation of the constitution? Yet by no process of reasoning can it be proved that the character of the transaction is altered by calling it an investment instead of transfer. We must not, however, be understood as holding that warrants against the general fund are not state securities within the meaning of the constitution. Although that question is not presented by this record, following *In re State Warrants*, 25 Neb., 659, and *State v. Bartley, supra*, we assume them to be legitimate investments for the permanent school fund; but if the state, as trustee for said fund, desires to invest in that class of securities, it is required to do so on terms of equality with other investors. We are aware of no precise legal definition of the term "investment" as applied to money. In common speech it means the loaning or putting out of money at interest so as to produce an income. (*People v. Utica Ins. Co.*, 15 Johns. [N. Y.], 358; *Scott v. Depeyster*, 1 Edw. Ch. [N. Y.], 513; *Shoemaker v. Smith*, 37 Ind., 122.) It implies the contractual relation of purchaser and seller or borrower and lender, and in that sense it is employed in the constitution. It follows that the state, in its relation as trustee, can no more require the holder of state warrants to part with them than

it can enforce the sale by a citizen of any other species of property.

It remains to be determined whether these relators have any standing in court in view of the respondent's offer to pay their warrants.   We have seen that the money which it was proposed to use for that purpose is declared to be a trust fund and that such an application thereof is not only a breach of the trust imposed upon the state, but a palpable violation of the constitution.   For such a misappropriation of that fund neither the act of the legislature nor the resolution would afford protection to the state board, the treasurer, or the relators.   A more radical but quite as fair a statement of the respondent's position is that the state can discharge its obligations to creditors by requiring them to receive in payment money held by it as trustee and for which they could be called upon at any time to account, a proposition as unsound in law as it is in morals, and not deserving of further consideration in this connection.   It is proper to observe, in conclusion, that relief on the line of the act here considered cannot, in view of the restrictions upon the power of the legislature, be attained by statutory enactments, but must be sought through a change in the fundamental law of the state. The peremptory writ of *mandamus* is allowed as prayed.

WRIT ALLOWED.