STATE, EX REL. WALTER R. JOHNSON, ATTORNEY GENERAL, APPELLANT, V. CENTRAL NEBRASKA PUBLIC POWER AND IRRIGATION DISTRICT, APPELLEE.

8 N. W. (2d) 841

FILED APRIL 2, 1943.   No. 31511.

*Walter R. Johnson, Attorney General,* and *Robert A. Nelson,* for appellant.

*R. O. Canady, P. E. Boslaugh, R. H. Beatty* and *M. M. Maupin, contra.*

Heard before SIMMONS, C. J., PAINE, CARTER, MESSMORE, YEAGER, CHAPPELL and WENKE, JJ.

YEAGER, J.

This is an action by the state of Nebraska on relation of Walter R. Johnson, attorney general, plaintiff and appellant, against the Central Nebraska Public Power and Irrigation District, a corporation, defendant and appellee. The action is for damages on account of the construction of an irrigation canal across certain common school lands located in Lincoln county, Nebraska.

In the petition on which the action was presented it was alleged that the plaintiff was the owner of certain lands, the description of which is not necessary to be set out here, in Lincoln county, Nebraska, which lands were granted to the state of Nebraska by the United States congress in the statehood enabling act for the support of the common schools; that the defendant is a corporation organized and existing under and by virtue of the laws of the state of Nebraska and is engaged in the construction and operation of power and irrigation works, including irrigation and water power canals and reservoirs which are works of internal improvements; that in connection with its power and irrigation works, the defendant unlawfully entered upon and took possession of and appropriated 27.36 acres of said

lands and exercises control and supervision thereof to the exclusion of the plaintiff; that in addition to the right of way appropriated, the land has been divided into two irregular tracts, one of which comprises about 50 acres which is inaccessible and will remain so unless a bridge is constructed across the canal; that the canal creates a dangerous condition and that fences will be required to protect occupants of and live stock upon the lands; and that the plaintiff owns no other common school lands within the irrigable area of the defendant district. Plaintiff claims damages in the amount of $5,000.

To the petition the defendant filed a general demurrer which was sustained. The plaintiff elected not to plead further. The petition was thereupon dismissed, from which action the plaintiff has appealed.

The theory or ground on which the demurrer was sustained and the action dismissed was that the petition did not state a cause of action for the reason that, because of legislative enactment or enactments, the defendant had the right to take, use and occupy a right of way over and across these lands for the purposes to which it was put without compensating the state or the common school fund therefor.

For the purpose of clarification of the issue presented and to avoid confusion it may be stated here that the matter of the right of the defendant to have taken the right of way by eminent domain is in nowise in question in this action.

The defendant is a public power and irrigation district organized and performing its functions agreeable to the provisions of Senate File No. 310 of the 1933 session of the Nebraska legislature, as amended, which act by its terms (Comp. St. Supp. 1941, sec. 70-707) declares all power plants and systems constructed or otherwise acquired, used or operated or to be constructed, acquired, owned, used or operated to be works of internal improvement. The act as amended also by its terms makes all provisions of law with regard to electric light and power corporations, irrigation districts and privately owned irrigation corporations and

their powers of eminent domain and the use and occupation of state and other public lands and highways available to public power and irrigation districts.

It was on the basis of the power and authority thus granted, and the legislative grant of authority contained in section 46-128, Comp. St. 1929, which is a part of the irrigation act of 1895, together with sections 46-601 and 46-607, Comp. St. 1929, which are a part of the Civil Administrative Code of 1929 dealing with irrigation which declares canals and other works constructed for irrigation or water power purposes, or both, to be works of internal improvement, that the defendants assumed to appropriate without compensation the right of way in question and to construct its irrigation canal thereon and thereover, and of course this also furnished the ground for the demurrer.

The particular portion of section 46-128, Comp. St. 1929, that is of concern here is the following: "The right of way is hereby given, dedicated, and set apart, to locate, construct and maintain such works over and through any of the lands which are now, or may be the property of the state; and also there is given, dedicated, and set apart for the use and purposes aforesaid, all water and water-rights belonging to this state within the district."

Section 46-601, Comp. St. 1929, is as follows: "Canals and other works constructed for irrigation or water power purposes, or both, are hereby declared to be works of internal improvement; and all laws applicable to works of internal improvement are hereby declared to be applicable to such canal and irrigation works."

Section 46-607, Comp. St. 1929, is, in part, the following: "All persons desirous of constructing any of the works provided for in the preceding sections, shall have the right to occupy state lands and obtain right of way over, and across any highway in this state for such purpose without compensation."

There is no contention in the briefs that the right of way taken and the canal constructed thereon do not come within the meaning of the term "works of internal improve-

ment" or that the defendant, in the performance of its statutory functions, does not have the power of eminent domain or that the statutes herein cited and quoted from were not intended by the legislature to permit the persons or corporations engaged as is the defendant to appropriate without compensation rights of way as was declared to have been done by the defendant. .

. The plaintiff here contends, and that is the only question for determination in this case, that the legislature is without power to grant rights of way across common school lands of the state and that the acts and parts of acts in question here purporting so to do are unconstitutional, null and void, and that in consequence of the pleaded wrongful taking the state is entitled to recover damages. The trial court held adversely to this contention, hence the sustaining of the general demurrer and the dismissal of the petition.

In order to determine this question it becomes necessary to examine the historical background of and source of title to the school lands of the state of Nebraska.

From the date of the Louisiana purchase in 1803 until after May 30, 1854, what is now the state of Nebraska was unorganized territory. On May 30, 1854, an act of congress was approved, the purpose of which was the organization of the territories of Nebraska and Kansas. Section 16 of this act, 10 U. S. St. at Large, p. 283, is as follows: "And be it further enacted, That when the lands in the said Territory shall be surveyed under the direction of the government of the United States, preparatory to bringing the same into market, sections numbered sixteen and thirty-six in each township in said Territory shall be, and the same are hereby, reserved for the purpose of being applied to schools in said Territory, and in the States and Territories hereafter to be erected out of the same."

Nebraska came into the Union as a state by virtue of an enabling act of congress approved April 19, 1864. (13 U. S. St. at Large, p. 47.) By the terms of this act (section 7) sections sixteen and thirty-six of each township were

granted to the state for the support of common schools, except in cases where sales had been made. In lieu of lands sold, the state was granted other lands equivalent in area in subdivisions of not less than quarter-sections.

A Constitution having been regularly approved within the territory in 1866, Nebraska was admitted into the Union on March 1, 1867. By its admission it assumed the privileges and duties of statehood, including those imposed by the congressional enabling act which included the acceptance of the lands and funds for the common schools of the state.

The Constitution of 1866 contained the following provision: "The principal of all funds arising from the sale, or other disposition of lands or other property, granted or intrusted to this state for educational and religious purposes, shall forever be preserved inviolate and undiminished; and the income arising therefrom shall be faithfully applied to the specific objects of the original grants or appropriations. The legislature shall make such provisions by taxation or otherwise, as, with the income arising from the school trust fund, will secure a thorough and efficient system of common schools throughout the state; but no religious sect or sects shall ever have any exclusive right to, or control of, any part of the school funds of this state." Const. 1866, art. VII, sec. 1.

The Constitution of 1875 was adopted which was amendatory of the Constitution of 1866 with regard to school lands and funds, their uses, and supervision and control thereof. The pertinent provisions are sections 1, 2 and 3 respectively of article VIII, as follows:

"The governor, secretary of state, treasurer, attorney general, and commissioner of public lands and buildings shall, under the direction of the legislature, constitute a board of commissioners for the sale, leasing, and general management of all lands and funds set apart for educational purposes, and for the investment of school funds in such manner as may be prescribed by law.

"All lands, money, or other property granted, or be-

queathed, or in any manner conveyed to this state for educational purposes, shall be used and expended in accordance with the terms of such grant, bequest or conveyance.

"The following are hereby declared to be perpetual funds for common school purposes, of which the annual interest or income only can be appropriated, to-wit: First. Such per centum as has been, or may hereafter be, granted by congress on the sale of lands in this state. Second. All moneys arising from the sale or leasing of sections number sixteen and thirty-six in each township in this state, and the lands selected, or that may be selected in lieu thereof. Third. The proceeds of all lands that have been, or may hereafter be, granted to this state, where, by the terms and conditions of such grant, the same are not to be otherwise appropriated. Fourth. The net proceeds of lands and other property and effects that may come to the state, by escheat or forfeiture, or from unclaimed dividends, or distributive shares of the estates of deceased persons. Fifth. All moneys, stocks, bonds, lands, and other property now belonging to the common school fund."

No material change was made with regard to school lands and funds in the Constitution of 1920. Since that time the composition of the board of commissioners has changed, but the functions are as they were fixed in the Constitution of 1875.

This history and these constitutional provisions fix the status of the common school lands of the state of Nebraska and their control and supervision. In these constitutional provisions must be found, if indeed it may be found, legislative power to give, dedicate and set apart rights of way to locate, construct and maintain works of internal improvement over and through school lands as was attempted by section 46-128, Comp. St. 1929, or the power to grant the right to occupy school lands and to obtain rights of way thereon and thereover without compensation as was attempted by section 46-607, Comp. St. 1929.

Analysis discloses that the only grant of control to the legislature is contained in section 1, of article VIII of the

1875 Constitution. Specifically the commission has control of management, preservation and disposition under the direction of the legislature with the requirement that the school funds shall be invested by the commission as may be prescribed by law.

Is then this constitutional directive grant of control over the commission by the legislature of sufficient breadth to allow the legislature in the respect herein under examination to assume control over the use or disposition of public school lands independent of the board of commissioners? This precise question has not heretofore been before this court.

The appellee insists that it has been before the courts of some of our sister states and in the brief cites the decisions of those courts.

Attention has been called to the case of *Idaho-Iowa Lateral & Reservoir Co. v. Fisher*, 27 Idaho, 695, 151 Pac. 998. Section 8, art. 9 of the Constitution of Idaho, provided: "No school lands shall be sold for less than ten dollars per acre." One phase of the controversy centered around the question of whether or not in the face of this provision the state legislature had power to grant rights of way across school lands for ditches, canals, reservoirs or other works for carrying or distributing public waters for irrigation without compensation.

The court there held that such power did reside in the legislature. It so, held substantially on three grounds. First, it held that the legislation was proper as a part of the sovereign right of eminent domain residing in the state and exercisable through the lawmaking body; second, that by reason of statutory classification of titles the granting of the right of way gave only the right to acquire an easement and not a fee title, and third, that viewed from an economic viewpoint an interpretation should be made, if it might be done, that would effect a benefit rather than detriment in the development of the state's resources.

The case of *Ross v. Trustees of University*, 30 Wyo. 433, 222 Pac. 3, is one wherein the power of the legislature to

give to the state board of land commissioners the right to grant without compensation rights of way for public highways across lands which had been given to the state by the congress of the United States in the Act of Admission under the following restriction was brought into question: "None of said lands shall be sold for less than $10 per acre, and the proceeds shall constitute a permanent fund to be safely invested and held by said state, and the income thereof be used exclusively for university purposes." Act of Admission of Wyoming July 10, 1890, sec. 8.

In acceptance of this grant with its restrictions the Constitution of the state of Wyoming contains the following: "Such lands shall be disposed of only at public auction to the highest * * * bidder, after having been duly appraised by the land commissioners, at not less than three-fourths of the appraised value thereof, and for not less than $10 per acre." Const. of Wyoming, art. 18, sec. 1.

The court sustained the power of the legislature to make the grant of authority to the board. It did so on the ground of necessity for and control of establishment of public highways, and under the power of eminent domain. The court said: "The power of a state to provide highways for public use has been likened to the power of taxation and said to be well-nigh as essential to the existence of government. Courts do not hold that the power has been surrendered except in those cases where there appears the deliberate purpose of the state to abandon it." On the application of eminent domain the court said: " 'Eminent domain' is shortly defined as the power to take private property for public uses. * * * So understood, we think that power is not involved in this case, but if, in the exercise of it, the state may permit corporations and individuals to acquire the right to use property of this character for quasi public purposes, it is hard to see why the state itself may not consent to its use for a purely public purpose, especially where that would seem to further rather than defeat the objects of the grant."

In *Grossetta v. Choate*, 51 Ariz. 248, 75 Pac. (2d) 1031,

the question before the court was that of whether the legislature had power to permit the state land department to grant a right of way to a county for a public highway over state lands. The act under which the grant had been made extended the right to make such grants "for any purpose it deems necessary, and sites for reservoirs, dams and power or irrigation plants or other purposes, on and over state lands." The case dealt only with a right of way for a public highway, and the discussion in the opinion is limited to that subject. The court quoted from the opinion in *Ross v. Trustees of University, supra,* the first quotation therefrom that we have set forth herein, and further quoting therefrom said: "But the object and end of all government is to promote the happiness and prosperity of the community by which it is established; and it can never be assumed, that the government intended to diminish its power of accomplishing the end for which it was created. And in a country like ours, free, active, and enterprising, continually advancing in numbers and wealth, new channels of communication are daily found necessary, both for travel and trade, and are essential to the comfort, convenience, and prosperity of the people. A state ought never to be presumed to surrender this power, because, like the taxing power, the whole community have an interest in preserving it undiminished." The Wyoming court took the quotation from *Charles River Bridge v. Warren Bridge,* 11 Pet. 420, 9 L. Ed. 773.

The case of *Texas Central R. Co. v. Bowman,* 97 Tex. 417, 79 S. W. 295, is one involving in one of its phases the constitutionality of an act of the legislature permitting railroads to obtain rights of way across school lands. On this constitutional question the court said: "As we have said, the construction of railroads has been regarded, in all of our legislative history and in the Constitution itself, as a legitimate means of settling, improving, and developing the resources of the state. The power to grant rights of way over the state's property had always been exercised as a proper means of securing these results. This power is

not expressly denied by the Constitution, and as, judged by our legislative history and the Constitution itself, it is to be regarded, not as an impediment, but as a help to the prescribed utilization of the school fund, it should not be held to have been denied by implication." Further in the opinion it is stated: "Another view of the Constitution sustains this legislation. The Legislature is permitted to provide for the incorporation of railroad companies by gen-' eral law only (article 3, sec. 56), and it is provided that such companies 'shall have the right to construct and operate a railroad between any points in this state.' This gives the consent of the people of the state for the Legislature, in the laws to be enacted, to authorize such construction and operation as far as it affects the state only."

The next case to which attention is called is *Imperial Irrigation Co. v. Jayne,* 104 Tex. 395, 138 S. W. 575. One of the questions in the case was that of whether or not the legislature at the time of the passage of the act under investigation had authority under the Constitution to grant an easement on any portion of the public school lands of the state for dam and reservoir sites for irrigation. The court said: "From the view we take of the law it seems to us to be settled by the decisions of this state that the Legislature has power to deal with the public school lands in any manner not inconsistent with the express denial of the Constitution." It was held that there was no such express denial.

From an examination of these decisions it has been ascertained that in some of these jurisdictions public school lands came to the states through similar enabling acts and that they have in much the same manner as in Nebraska been constitutionally accepted, but it must be noted that in none of the cases was the question of authority of the legislature to dispose directly of school lands or their use and occupancy contrary to what appears to be an inhibition against such direct disposal by the legislature contained in our Constitution raised. It will be noted also that in those cases where it was held that the right resided in the legisla-

ture by reason of the state's right of eminent domain, the right of eminent domain which the court considered as available was the inherent or sovereign right of eminent domain and not the right of eminent domain flowing from statutory enactment.

It may therefore be observed that these cases are not fully in point here since, as has already been pointed out, the school lands of the state of Nebraska are a trust held by the state and, by constitutional provision, are in the control of the board of educational lands and funds which board is subject to control, within constitutional limitations, by the legislature. See *State v. Bartley*, 41 Neb. 277, 59 N. W. 907; *State v. Board of Commissioners*, 141 Neb. 172, 3 N. W. (2d) 196.

With regard to the public school fund derived from sale or income from public school lands which received the same constitutional treatment as the lands, this court has said: "The provision of the enabling act making the grant, and of the Constitution of 1866 setting apart and pledging the principal and income from such grant * * * , and the subsequent act admitting the state into the Union under such Constitution constituted a contract between the state and the national government relating to such grants. By section 1, art. XVI (XVIII) of the Constitution of 1875, it was 'ordained and declared' that 'all laws in force at the time of the adoption of this Constitution, not inconsistent therewith, and all * * * contracts of this state * * * shall continue to be as valid as if this Constitution had not been adopted.' This provision carried forward into the new Constitution the pledge made in the Constitution of 1866." *State v. Brian*, 84 Neb. 30, 120 N. W. 916.

It therefore follows that by reason of this the state was and still is under a contractual as well as a constitutional obligation to refrain from disposition or alienation of the use of this property except as allowed by the enabling act and the Constitution.

Prior to 1875 no constitutional agency had been set up for the handling of the public school lands and funds, so

doubtless that was a matter for legislative control within the constitutional and contractual limitations. However, by the Constitution of 1875 (art. VIII, sec. 1), this direct control by the legislature was taken away and placed in the hands of a commission which was under the control of the legislature.

The court speaking of this point said in *State v. Bartley*, 40 Neb. 298, 58 N. W. 966: "By this provision the power to sell, lease, and manage the educational lands of the state is conferred upon a distinct board, composed of the state treasurer and four other state officers. Likewise, upon the same board the Constitution has placed the duty of investing the permanent school fund of the state. The authority thus conferred upon the board of commissioners, or board of educational lands and funds, as it is usually called, the legislature is powerless to take away. The legislature may, by statute, provide upon what terms the educational land shall be leased or sold, yet it cannot empower the governor, or any other state officer alone, to sell or lease such lands. So the legislature may, by statute, prescribe the mode or manner in which the permanent school fund shall be invested in the securities enumerated in the Constitution; but it has no power to relieve the board created by said section 1 of article 8 of the duty of making such investment; nor can it authorize any other board or person to invest said funds." See, also, *State v. Bartley, supra; Faun. Lake Ranch Co. v. Cumbow*, 102 Neb. 288, 167 N. W. 75.

If then the grant here in question by the legislature is an interference with the control of public school lands within the meaning of section 1, art. VIII of the Constitution of 1875, we are required to hold that such legislation is unconstitutional, null and void.

The appellee contends that this legislation falls within the legislative prerogative for the reason that the grant is of an easement as distinguished from a fee title.

We do not doubt that only easement is claimed and that this was all that the defendant sought here to acquire, but should that be the determining factor especially when in a

petition for damages, as here, it is declared that by the taking of the right of way and construction of a canal thereon great damage to the land was occasioned and a large portion of it was rendered useless, without large expense for providing ingress thereto and egress therefrom, with no benefit to that or any other school land?

It is true that in some of the other jurisdictions it has been held that constitutional inhibition against legislative disposition of public school lands contemplated only alienation of the fee and did not embrace easements for internal improvements made in the interest of the general welfare and economic and social improvement and advancement. Public convenience and necessity under the given circumstances appears to have been a prime motive in the conclusions reached. But whatever the motive or the reasons for the conclusions we do not consider them compelling or binding here.

Whether the grant be of the fee or of an easement for use and occupation temporarily or in perpetuity, the public school lands have been diminished permanently or for a peiod of time and the school fund suffers because of the loss of income therefrom, and the use of other portions of the tract is destroyed or diminished. In either event there is damage. According to the petition no benefit flows to this land or any other public school land, from the use of the part taken by defendant. The benefit flows to the defendant and to the people served by the district.

Should the public school land be depleted, and in consequence the revenues for the support of the public schools of the state be impaired, in the interest of a community within the state but not the state as a whole? Does not reason support the view that for such taking the recipient or recipients of the taking should bear the burden of the loss occasioned by such taking? We think there is but one reasonable answer to these questions. The former requires a negative and the latter an affirmative answer.

In the light of the clear and explicit constitutional and contractual provisions referred to herein, the relationship

of the parties, the purposes to which these lands have been solemnly dedicated, the ultimate effect of the taking of this right of way, and the purposes to be accomplished thereby, we cannot observe any sound economic or social reason or constitutional ground upon which to declare or uphold the power of the legislature to make the grant with regard to public school lands of which the plaintiff here complains.

It might also be added that it is probable that the state has power to grant an easement across public lands for roads, or other public improvements, which the sovereign has power to construct or authorize for the general public benefit or in the interest of public welfare, but here no such question is presented. The lands here, by the Constitution and congressional act, belong to the public school system of the state and the state is but the trustee thereof. The state as trustee is without power through legislative means or otherwise to bestow a special benefit upon the defendant or any other person or corporation, public or private, at the expense of the *cestui que trust*, the public school system of the state.

The acts or parts of acts purporting to grant to public corporations or persons engaged in construction, operation and maintenance of works of internal improvement the right to obtain rights of way over and across public school lands without compensation are hereby declared to be unconstitutional, null and void.

The judgment of the district court is reversed and the cause remanded for further proceedings in conformity with this opinion.

REVERSED.