[No. 2802.  Decided February 1, 1898.]

THE TACOMA LAND COMPANY, v. C. W. YOUNG, *as State Treasurer*.

TIDE LANDS — SALE — IMPROVEMENT OF HARBORS WITH PROCEEDS — CONTRACTUAL RIGHTS OF PURCHASERS — STATUTE — REPEAL — SUBJECT AND TITLE.

Laws 1891, p. 405, relating to the improvement of harbors and waterways, and Laws 1895, p. 527, relating to the public lands of the state and amending the former act, are not sufficiently definite to provide for an expenditure of the moneys derived from sale of state tide lands. in the way of improvements, although the acts contemplate the setting aside of seventy-five per cent. of the moneys received from such sales for purposes of harbor improvements.

The purchase of tide lands from the state under an act which devotes seventy-five per cent. of the moneys so received to the

improvement of the harbor in which the land is situated, does not vest the purchaser with an interest in such tide land fund.

The purchaser of tide lands within the harbor area of a city under an act proposing to devote seventy-five per cent. of the funds derived from the sale of such tide lands to the improvement of the harbors and waterways of the cities contiguous to such tide lands, acquires no contract right through such purchase, which would prevent succeeding legislatures from repealing the act, when the act does not definitely make provision for such expenditure, and when the interest of the purchaser is too remote to constitute a contractual obligation with reference to the expenditure of said moneys on the part of the state.

The fact that one section of the act of March 16, 1897, relating to public lands of the state recognizes the existence of the tide land fund created by the act of March 10, 1891, relating to the improvement of harbors and waterways, and authorizes its disbursement, would not serve to continue such law, nor any of its provisions, in force when another section of the law of 1897 expressly repeals said law of 1891, where the section recognizing the existence of the tide land fund is not sufficient in itself to create such fund and provide for its disbursement.

The provisions of Laws 1897, p. 229, providing for the repeal of Laws 1891, p. 405, relating to the improvement of harbors and waterways, sufficiently embraces that subject in its title, when said act of 1891 had been amended by Laws 1895, p. 527, which had substantially the same title as the act of 1897, and the repealing clause of 1897 expressly included Laws 1895, p. 527, within its operation.

*Original Application for Prohibition.*

*Sullivan & Christian,* for plaintiff.

Upon the point that any attempted diversion of the tide land fund to other purposes than the improvement of harbors would be an impairment of plaintiff's contract rights, counsel cite Cooley, Constitutional Limitations (5th ed.), p. 345; *Commonwealth v. Philadelphia & Erie R. R. Co.,* 164 Pa. St. 252; *State, ex rel. Brown, v. McPeak,* 47 N. W. 691; *Buffalo v. Chadeayne,* 31 N. E. 443; *Craig v. Dunn,* 49 N. W. 396; *Pennoyer v. McConnaughy,*

140 U. S. 1 (Book 35, L. C. P. Co. 363); *Tracy v. Reed*, 38 Fed. 69 (2 L. R. A. 773); *Davis v. Gray*, 16 Wall. 203 (Book 21, L. C. P. Co. 452); *McCless v. Meekins*, 117 N. C. 34; *Woodruff v. Trapnall*, 10 How. 203 (Book 13, L. C. P. Co. 388).

*Thomas M. Vance*, Ass't Attorney General, for defendant.

The opinion of the court was delivered by

Scott, C. J.—The plaintiff seeks by this proceeding to prevent the state treasurer from applying moneys received from the sale of tide lands in the payment of outstanding general fund warrants. In 1891 the legislature passed an act relating to the improvement of harbors and waterways (Laws 1891, p. 405, Bal. Code, §§4064-4066). Section 1 of that act provided that seventy-five per cent. of the proceeds derived by the state from the sale of tide lands within the limits of any incorporated city or town or within one mile on either side thereof should be set apart and appropriated as a special fund for the construction and maintenance of a system of permanent and substantial improvements in the aid of commerce and navigation in and for the harbor of said city or town wherein such tide lands may be sold, and that the remaining twenty-five per cent. should be paid into the general tide land fund of the state.

In 1895 another act was passed (Laws 1895, p. 527) relating to the public lands of the state, amending the act aforesaid, or, as the plaintiff contends, substantially re-enacting it.

The plaintiff alleges in substance that on the first day of January, 1896, it paid to the commissioner of public lands as a part of the purchase price for various tide lands of the first class lying in front of the city of Tacoma the

sum of $10,930.33 as a first payment, and on the 20th day of said month it entered into a contract with the state as provided by section 30 of the Laws of 1895 (p. 542) for a conveyance of such lands; that the total purchase price thereof was $109,285.93, and that it thereafter purchased other tide lands and made further payments thereon, in all amounting to the sum of $30,590.86; that the plaintiff is a large taxpayer in the state, particularly in the city of Tacoma, and that for the year 1896 the property of the plaintiff in said city was assessed for the purposes of taxation at over $3,000,000; that between July, 1890, and the first day of January, 1896, it expended over $250,000 in improving the harbors in front of the city of Tacoma, and a portion of the tide lands purchased as aforesaid for the purpose of making said tide lands available for commerce, which improvements are of a permanent character; that in addition to the amounts paid by plaintiff there has been paid by other associations and persons for the purchase of tide lands in front of the city of Tacoma and within two miles of its limits an amount exceeding $100,000, all of which was paid after the first day of May, 1895, and before the first day of January, 1897; that the state treasurer proposes to treat all of said moneys as belonging to the general funds of the state to be used for the payment of general fund warrants, and that such outstanding liabilities are more than sufficient to exhaust said moneys, and which, if done, would be to the great injury of the plaintiff and all purchasers of tide lands in said city, as well as other cities of the state; that such proposed disposition of the funds derived from the sale of tide lands would be illegal and in violation of the contract rights of the plaintiff and all others who purchased tide lands lying in front of incorporated cities; and prays that said state treasurer may be perpetually enjoined from in any manner using seventy-

five per cent. of the moneys derived from the sale of tide lands in front of the city of Tacoma, and within two miles thereof on either side — the act of 1895 having prescribed said limit of two miles instead of one mile as specified in the act of 1891 — for any purpose whatever except for the purpose of improving the harbors and waterways in front of said city. It is further alleged that all sales of tide lands in front of the city of Tacoma were made after the enactment of the law of 1895 and prior to the meeting of the last legislature in January, 1897, and that the plaintiff is under contract made in pursuance of the laws of 1895, upon the purchases made thereunder, obligated to pay the state an amount in excess of $109,000.

One of the contentions of the defendant is that the acts of 1891 and 1895 aforesaid were insufficient and too indefinite to create a separate fund. But while we do not concur with him in that view, we are disposed to agree with the further contention that the acts aforesaid were not sufficiently definite to provide for an expenditure of money in the way of improvements, and that further legislation for that purpose would have been necessary. This, however, is not a very material question in this proceeding. The main contention of the defendant is that the acts aforesaid were repealed by an act approved March 16, 1897 (Laws 1897, pp. 229-263, Bal. Code, §§2130-2200). Before considering this question it may be well to notice one or two other matters in a measure relating to the case, but which, under the view we have taken as hereinafter expressed, are not necessarily involved or required to be decided. By section 1 of article 17 of the constitution the state asserted its ownership to the beds and shores of all navigable waters in the state up to and including the line of ordinary high tide in waters where the tide ebbs and flows, etc. And while the state could undoubtedly use the

moneys derived from a sale of such lands in constructing public improvements of waterways if it so desired as a matter of public policy, and as it may be conceded it proposed to do by the two first acts specified, yet, considered as a public matter, the state would undoubtedly have the right to repeal those laws at any time it saw fit to do so. But the plaintiff contends that the effect of these acts was to transfer an interest in said funds to tide land purchasers, practically as a matter of private ownership, by providing for an expenditure of the moneys in the improvement of the harbors. It is not alleged that the plaintiff paid any greater sum for the lands it purchased than it would have paid otherwise, and considered in this light it might be a question whether the state could confer on a private party an interest in said funds, or give public property to an individual not purporting to do so upon any demand against, or obligation of, the state.

But the plaintiff's main contention is that by these acts and its purchase of tide lands thereunder a contract was created between it and the state whereby seventy-five per cent. of the moneys derived from the sale of such tide lands should be devoted to the improvement of the harbors and waterways in front of said city and that it would be beyond the power of any succeeding legislature to annul or interfere with such contract rights to the detriment of tide land purchasers. If this position is well taken it would not only apply to sales already made and exisiting contracts, but would also apply to the proceeds hereafter received from the unsold lands, for the contract was not that the particular moneys paid by the plaintiff or by prior purchasers should be devoted to the improvement of such harbors and waterways, but that all moneys derived from a sale of tide lands in front of said city or within two miles thereof upon either side should be so expended, and would

require their expenditure with reference to the condition of affairs existing at the time the contracts in question were made, as, if the legislature could not abrogate the contract, it could not alter it or impair it by authorizing a re-platting of the harbor lands which might necessitate a different system of improvements with reference thereto. It would certainly be a most serious matter if one legislature could bind all succeeding legislatures to such an extent. Even if there were such a contract it would not necessarily follow that the legislature could not violate it and relegate the plaintiff to an action of damages for its breach. But we do not find it necessary to determine whether it would be within the power of a subsequent legislature to abrogate such a contract if one existed, for we are of the opinion that no contract with tide land purchasers to expend the moneys in the improvement of harbors was entered into under the acts aforesaid, that the acts were too indefinite and the interest, if any, of such purchasers in said funds too remote to constitute a contractual obligation with reference to the expenditure of said moneys on the part of the state. It will be observed that no provision was made for the expenditure of any of said moneys in constructing improvements at or near any particular part of the harbor line or contiguous to the lands purchased by the plaintiff or of any particular upland owner, improver or other purchaser. The limits within which the improvements might be constructed extended along the entire water front of the city under these acts, and, if the money could have been expended for improvements at all under them, it could all have been expended at any one point within said limits miles away from the land of a particular purchaser, and it might have been so expended without any benefit to certain purchasers—possibly to the damage of some, as if the same were devoted to making available a

distant portion of the water front not capable of being used in its natural condition, but which might be improved with the fund to make it suitable for the purposes of commerce, thereby largely increasing the water front facilities, the value of other particular property which was capable of being used without such expenditure might be lessened and the owner thereof damaged to that extent. The allegation in the petition that the plaintiff would be damaged by a failure to expend the moneys in constructing improvements must be regarded as a mere conclusion. In any event it is immaterial, for the construction of the law could not depend upon the situation of a particular purchaser who might own lands distributed along the entire water front, if that be the case here, but it must be construed with reference to all purchasers and its general effect as to all harbors.

It will also be observed that no time whatever was specified within which such improvements should be commenced or completed, and the failure to prescribe any period of time would have been a strange oversight if the matter of public improvements was intended to operate as a contract with tide land purchasers. It is admitted that there has been no attempt so far to construct any improvements under said acts. It is possible that such a declared policy relating to improvements may have had some influence upon intending purchasers. Concede that the several municipalities interested as a matter of justice are entitled to have a part or all of the moneys derived from the sale of tide lands devoted to constructing local public improvements and that a moral obligation rests upon the state to carry out such a policy, under either view, it would not affect the power of any legislature to repeal the laws in question, if it saw fit to do so, and the matter would not be within the control of the courts in any way.

The plaintiff also contends that there was no intention to repeal such laws for the reason that by section 57 of said act of 1897 (Bal. Code, §2187) the legislature substantially re-enacted the act passed in 1891, and conferred upon the board therein mentioned full power and authority to do all things that could have been done under said act of 1891, and it appears that there is a general recognition of the existence of the tide land fund in said section, and a reference to the act of 1891, but this act is more indefinite in the particulars aforesaid than the first act, and was too vague and utterly insufficient for the purposes of constructing such improvements. By section 70 of said act the law of 1891 was expressly repealed, but the plaintiff contends further that this provision was void as not being embraced within the title to the act, citing *Howlett v. Cheetham*, 17 Wash. 626 (50 Pac. 522); but we do not consider the question as presented here controlled by the decision in that case, for the law of 1891 was amended in 1895, and the title to the last act was the same as the title to the act passed in 1895, and that act was also expressly repealed in said section 70. The attention of the court was not directed to the question of the repeal of the act in the case of *State ex rel. Hellar, v. Young, ante,* p. 21 (50 Pac. 786), relating to the investment of tide land funds under the act approved January 22, 1897 (Laws 1897, p. 3, Bal. Code, §2202).

While there is an inconsistency in the last act in incidentally recognizing the tide land fund and at the same time repealing the acts creating it, yet this of itself would not be sufficient to override an express repeal of those laws. No room is left for construction, as both of the prior laws were expressly repealed. The last act was not sufficient and did not attempt to create such a fund, and the repeal of the laws creating it had the effect of abrogating the

fund, thereby transferring the moneys to the general fund, and it became and was the immediate duty of the treasurer to apply the moneys on hand previously belonging thereto and received from time to time thereafter in payment of the outstanding general fund obligations of the state.

Writ denied.

GORDON, ANDERS, DUNBAR and REAVIS, JJ., concur.