WILLIAM T. TATE, APPELLEE, V. NEWTON BIGGS ET AL., APPELLANTS.

FILED APRIL 24, 1911. No. 16,410.

1. **Taxation:** SALE FOR TAXES: TREASURER'S RETURN. The return which a county treasurer is required to make to the county clerk of his public sales of real estate for taxes must be certified and signed by him.

2. ———: ———: NOTICE. The treasurer's notice of tax sales must contain substantially all of the matters specified in the statute. If it omits the statement that so much of each tract as may be necessary will be sold for the taxes, interest and costs thereon, and that it will be made by the treasurer at public auction on the first Monday of November next thereafter, the sale made pursuant thereto will be invalid.

3. ———: TAX DEED: CONCLUSIVENESS. Section 221 of the revenue law (Comp. St. 1903, ch. 77, art. I) will not be construed to mean that a tax deed shall be conclusive evidence of all matters not recited in that section.

4. **Abandonment:** TITLE TO REALTY. Facts recited in the opinion *held* not to amount to an abandonment of a legal title in real estate. Whether such title can be lost by abandonment, *quære*.

APPEAL from the district court for Cheyenne county: HANSON M. GRIMES, JUDGE. *Affirmed.*

*Hoagland & Hoagland* and *Leroy Martin,* for appellants.

*Courtright & Sidner, contra.*

*C. S. Allen, amicus curiæ.*

SEDGWICK, J.

The plaintiff began this action in the district court for Cheyenne county to set aside a tax deed of certain lands in that county and to redeem the lands from the tax sale. The decree of the district court was in his favor, and the defendants have appealed.

The plaintiff alleged that the land was conveyed by the United States to the Union Pacific Railroad Company, and by that company to one Arthur W. Oborne, who, with his wife, conveyed the land to the plaintiff by deed. The petition alleges many defects in the proceedings resulting in the tax sale and deed; and in his brief plaintiff relies upon three contentions: First, that the notice of sale was defective; second, that no sufficient return of the public sale was made by the treasurer to the county clerk, the sale upon which the deed was issued being a private sale; third, that the sale was excessive.

1. The defendants, who are appellants, contend that the trial court determined the case solely upon the second of the foregoing contentions of the plaintiff, holding that the return of the treasurer to the county clerk was insufficient. There was some controversy in the evidence as to whether any attempt was made by the treasurer to comply with the statute requiring him to make a return of the public sales before selling any of the land at private sale, but we think that it sufficiently appears that the following document in typewriting was filed by the treasurer with the county clerk as his return, and that no other return was made by him:

"Land sold at public auction by A. K. Greenlee, Co. Treas. Cheyenne County, Nebraska, 1905.

| Number | Date | Sold to | Description | Amount |
|--------|------|---------|-------------|--------|
| 1251 | Nov. 7 | Jas. Thompson | N. E. 2-15-49 | $8 95 |
| 1252 | Nov. 10 | L. G. Simon | S. S. E. 5-14-48 | 24.50 |

"Sidney, Nebr., Nov. 11th, 1905."

(Indorsed) "Filed Nov. 12, 1905. R. E. Barrett, Co. Clerk."

Section 204 of the revenue act of 1903 (Comp. St. 1903, ch. 77, art. I) provides: "The treasurer shall keep a sale book showing in separate columns the number and date of each certificate of sale, the name of the owners or owner if known, the description of each tract of land or town lot, the name of the purchaser, the total amount of taxes and costs for which sold, the amount of subsequent taxes paid by the purchaser and date of payment." Section 205 is as follows: "On or before the first Monday of December following the sale of real property, the treasurer shall file in the office of the county clerk a return thereon as the same shall appear on the treasurer's sale book and such return duly certified shall be evidence of the regularity of the proceedings." Section 206 provides that lands may be sold at private sale after "the treasurer shall have made his return."

The revenue law of 1879, which was replaced by the act of 1903, also provided that private sales might be made after the treasurer had made return of his public sale, and under that act it was many times held by this court that no valid private sale could be made by the treasurer until after he had made this return. The defendants contend that the statement filed with the county clerk by the treasurer without the signature of the treasurer or any certificate thereon is sufficient. If a return of the public sales must be made by the treasurer before any valid private sale can be made, as has been so often held by this court, it must be, of course, such a return

as the statute prescribes; that is, whatever the statute directs as to the form and character of the return must be complied with or it cannot be said to be a return at all, within the meaning of the statute. Does the statute intend that the return shall be signed and certified to by the treasurer? The act of 1879 (laws 1879, p. 275, sec. 112) provided that after making the public sale the treasurer should file "a return thereof, as the same shall appear on said sale book, and such certificate shall be evidence of the legality of the proceedings." The former act called the return a "certificate", and, of course, unless it contained some language that would amount to an assertion by the treasurer that it was a correct return of his proceedings, it could not be a certificate, and would not be such a return as was contemplated by that act. There is no apparent reason for a change of the phraseology. We think that the language of the act of 1903 must have the same construction. The return must be filed, and such return must be duly certified. The word "return" has a legal meaning, more or less definite and certain. Webster's New International Dictionary defines it: "(a) The rendering back or delivery of a writ, precept, or execution, to the proper officer or court. This is now usually done by filing the document, properly indorsed, in the clerk's office. (b) The certificate of an officer stating what he has done in or about the execution of a writ, precept, etc., indorsed on the document. (c) The sending back of a commission with the certificate of the commissioners." The treasurer derives his authority to make the sale from the tax list furnished him by the county clerk. This list is in some respects analogous to a writ of execution, and this affords some explanation of the use of the technical word "return" in the statute. The act of 1879 did not require this return to show the name of the owners or owner of the land, but by the act of 1903 this is required, but the paper relied upon as a return does not give this information. We think the trial court was right in holding that there was no sufficient return by the treasurer of the public sale.

2. One of the objections made by plaintiff against the validity of the tax deed is that the notice of the tax sale is insufficient. The act of 1879 provided for no notice, but by the amendment of 1885 a notice of tax sale was required, and the statute provided what it should contain. "The notice shall contain a notification that all lands, on which the taxes of the preceding year, naming it, remain unpaid, will be sold, and the time and place of the sale, and said notice must contain a list of the lands to be sold and the amount of taxes due thereon." Laws 1885, ch. 73, sec. 1 (109). The notice published was as follows: "Notice of Tax Sale. The following is a list of lands and town lots on which taxes for the year 1904 and prior years are delinquent and unpaid, and which will be offered for sale for taxes at the county treasurer's office in the village of Sidney, Cheyenne county, Nebraska, on and after the first Monday in November, 1905, between the hours of 9 o'clock A. M. and 4 o'clock P. M. A. K. Greenlee, County Treasurer. October 1, 1905. Township 12, range 47, sec. 1 nw, $2.60; 2 sw, $13.68," etc. It appears to substantially comply with the amendment of 1885. The act of 1903 required that the "treasurer shall    *    *    * make out a list of all lands and town lots subject to sale, and the amount of all delinquent taxes against each with interest to the date of sale, describing such land and town lots as the same are described on the tax list, with an accompanying notice stating that so much of each tract of land or town lot described in said list as may be necessary for that purpose will, on the first Monday of November next thereafter, be sold by him at public auction." Comp. St. 1903, ch. 77, art. I, sec. 194. The published notice offers only the entire tract; it fails to state that so much of each tract as may be necessary will be sold. It does not state that the sale will be made by the treasurer, nor that it will be at public auction, nor that it will be for the taxes, interest and costs thereon, nor that it will be on the first Monday of November next thereafter. This notice is not a compliance with the present statute.

3. The third objection which the plaintiff makes to the tax deed is that the land was sold for a greater amount than the taxes, interest and costs thereon. It is claimed that the entire land was sold without offering to sell "so much of each tract * * * as may be necessary * * * for the taxes, interest and costs thereon," and that it was sold for more than the taxes, interest and costs amount to. Of course, such a sale would be invalid, but these allegations are disputed by the defendant, and the parties appear to derive different results from the computation which they have made. The sale is invalid for the reasons given, and we do not find it necessary to discuss these computations.

4. It is contended that the statute makes the tax deed conclusive as to the matters herein discussed. Sections 220 and 221 of the act of 1903 (Comp. St. 1903, ch. 77, art. I) are taken entirely from section 130 of the act of 1879 (laws 1879, p. 328), omitting a few significant words. The first part of said section 130 is as follows: "Deeds made by the county treasurer as aforesaid shall be presumptive evidence in all the courts of this state, in all controversies and suits in relation to the rights of the purchaser, his heirs or assigns, to the land thereby conveyed, of the following facts: (1) That the real property conveyed was subject to taxation for the year or years stated in the deed; (2) that the taxes were not paid at any time before the sale; (3) that the real property conveyed had not been redeemed from the sale at the date of the deed; (4) that the property had been listed and assessed; (5) that the taxes were levied according to law; (6) that the property was sold for taxes as stated in the deed; (7) that notice had been served and due publication had as required in section 123 of this chapter, before the time of redemption expired." It then provides that the treasurer's deed shall be conclusive evidence of certain things, and concludes the section with the provision, which is inserted as section 221 of the act of 1903, and is as follows: "And in all controversies and suits

involving the title to real property claimed and held under and by virtue of a deed made substantially as aforesaid by the treasurer, the person claiming title adverse to the title conveyed by such deed, shall be required to prove, in order to defeat the said title, either that the said real property was not subject to taxation for the year or years named in the deed, that the taxes had been paid before the sale, that the property had been redeemed from the sale according to the provisions of this chapter, and that such redemption was had or made for the use and benefit of persons having the right of redemption under the laws of this state, or that there had been an entire omission to list or assess the property, or to levy the taxes, or to sell the property; but no person shall be permitted to question the title acquired by a treasurer's deed without first showing that he, or the person under whom he claims title, had title to the property at the time of the sale, or that the title was obtained from the United States or this state after the sale, and that all taxes due upon the property have been paid by such person, or the person under whom he claims title as aforesaid; provided, that in any case where a person had paid his taxes, and through mistake in the entry made in the treasurer's books. or in the receipt, the land upon which the taxes were paid was afterwards sold, the treasurer's deed shall not convey the title; provided, further, that in all cases where the owner of lands sold for taxes shall resist the validity of such tax title, such owner may prove fraud committed by the officer selling the same or in the purchaser to defeat the same, and if fraud is so established such sale and title shall be void." This made it incumbent upon the person claiming the title adverse to the tax deed to disprove matters of which the tax deed was presumptive evidence, but this language in the said section 130 could not be construed to mean that a tax deed was conclusive evidence of any of those things of which the section expressly provided that it should be presumptive evidence only.   In the act of 1903

the words "and it shall be conclusive evidence of the following facts", which were found in the former act, were omitted, and those facts of which the tax deed was made the conclusive evidence in the former act were in the latter act added to section 220, which specifies the facts of which the tax deed shall be presumptive evidence. The two sections of the present law must be construed together and made consistent with each other. To hold that the tax deed is conclusive evidence of all matters not recited in section 221, as urged by defendants, would make that section inconsistent with section 220, which provides that the tax deed shall be presumptive evidence only of the matters therein specified. The legislature will be presumed to have knowledge of the construction that had been given to section 130 of the act of 1879, and to have intended the same construction to be given to similar language in sections 220 and 221 of the present act. By omitting to provide that the tax deed shall be conclusive evidence of these matters and classifying them all as matters of which the tax deed is presumptive evidence only, the legislature must have intended that section 221 would be construed as the same language has been construed many times by this court while the act of 1879 was in force, and that language has always been construed as consistent with that part of the said section 130 which made the tax deed presumptive evidence only of certain matters therein so specified. Section 221, therefore, of the present act, which recites some of those things of which the tax deed is presumptive evidence, cannot be construed to intend to make the tax deed conclusive evidence of all matters not therein recited. The notice of sale must be given substantially as the statute provides, and the treasurer must make return of his public sales before selling lands at private sale. The tax deed is not conclusive evidence that these requirements have been complied with.

5. At the conclusion of the trial the defendants asked leave to amend their answer by inserting a plea of aban-

donment of the land by plaintiff's grantor, and estoppel by reason of laches. The court refused to permit such amendment, and this ruling is now assigned as error. The plea offered, after stating the conclusion of the pleader that there had been such abandonment, alleges the facts upon which such conclusion is predicated. They are that Oborne, plaintiff's grantor, for a long time prior to 1908 (date of plaintiff's deed) failed to pay the taxes duly levied upon the land, and failed and refused to place his deed of conveyance from the Union Pacific Railroad Company upon record with the further allegation that, "by reason of such abandonment and the tax proceedings herein, the said Oborne and plaintiff are estopped by their acts aforesaid to reassert title to said premises and to question the validity and regularity of the proceedings upon which defendants' title is based." At common law legal title to land could not be lost by abandonment. If this rule is applicable to our conditions it has been adopted by our statute. This, however, we do not find it necessary to determine in this case, since the acts pleaded would not amount to an abandonment, even in those jurisdictions which have followed the rules of the Spanish law.

The decree of the district court is

AFFIRMED.