FAWN LAKE RANCH COMPANY, APPELLANT, v. F. A. CUMBOW ET AL., APPELLEES.

FILED MARCH 16, 1918. No. 20436.

1. **Waste: REMOVAL OF MINERALS: SCHOOL LAND LEASES.** The removal of mineral from land lessens the value of the inheritance, and constitutes waste, which is forbidden by the terms of the school land lease under which plaintiff claims and by the statute relating to school lands.

2. School Lands: Control. Under section 1, art. VIII of the Constitution, the Board of Educational Lands and Funds is vested with the power of sale, leasing and general management of school lands under the direction of the legislature and in such manner as may be prescribed by law.

3. ———: Sale. Under section 5855, Rev. St. 1913, as amended by chapter 103, Laws 1915, the sale of educational lands is prohibited except in certain instances specified in that section.

4. ———: ———. Except for instances mentioned in said section and for the sale of sand and gravel, there is no legislative sanction now existing for the sale and disposition of any part of the corpus of the real estate belonging to the state for the benefit of the common schools.

5. ———: Control. The power of the Board of Educational Lands and Funds to lease, sell or dispose of school lands only exists in so far as it is directed or permitted by the legislature.

Appeal from the district court for Cherry county: William H. Westover, Judge. *Reversed.*

*Walcott & Walcott* and *Hainer, Craft & Lane,* for appellant.

*John J. Sullivan, J. J. Harrington, J. C. Quigley, Willis E. Reed, Attorney General,* and *George W. Ayres, contra.*

*John M. Macfarland* and *Howell M. Uttley, amici curiæ.*

The plaintiff avers that it is in possession as lessor of section 16, township 29, range 39, by virtue of certain leases executed by the state of Nebraska; that defendant trespassed thereupon, and threatens to sink a pipe line and extract mineral from a lake thereupon; that the lease does not expire until 1925. The prayer is for an injunction to prevent the trespass and the removal of any mineral water from the lake.

The land is held under three leases which are set forth as exhibits to the petition. Each of the leases is executed by the then public commissioner of lands and buildings. It recites it is issued "in pursuance and

102 Neb.—19

by virtue of the power and authority vested in me by the state of Nebraska." It provides, among other things, that the lessor will pay semi-annually in advance 6 per cent. upon the appraised value of the lands, and "that he will not commit any waste or spoil in or upon said lands." The answer admits that defendant intends to enter upon the land for the sole purpose of extracting potash and other minerals from the water of the lake and to convert the same to his own use; alleges that he duly leased the land from the state of Nebraska for the purpose of prospecting for minerals, gas, petroleum, potash, and other valuable substances; that the plaintiff's lease is an agricultural lease solely; that plaintiff has no right by virtue of said lease to take any minerals; that the rent paid by plaintiff is upon the appraised value for agricultural purposes; that there is no open mine on the land, and none has ever been upon it or operated thereon; that the doing of anything which the defendant proposes to do will not diminish the value of plaintiff's lease; that the mineral waters and minerals are of no value for stock-raising purposes; that the land has no value except for grazing; that unless plaintiff is restrained and enjoined he will prevent defendant and his employees from laying pipe lines or extracting mineral potash, which is of high value at the present time on account of the war, and which could not successfully be extracted with profit in ordinary times; and that, if prevented from extracting the minerals, it will be of great injury and damage to himself and to the state of Nebraska. He prays for an injunction to prevent plaintiff from interfering with his rights in the premises. A copy of the lease mentioned is attached.

The substance of the lease is that the commissioner of public lands and buildings has leased and granted the right to defendant, his heirs or assigns, "to enter upon and occupy the premises as herein below described, for the purpose of prospecting for minerals,

petroleum, gas, potash, or other valuable substances, and for producing the same to excavate, drill wells, lay pipe lines, erect necessary buildings, tanks or structures, to release or subdivide the premises described." The lease is to extend for a term of three years, and as long thereafter as minerals are produced in paying quantities and the rental terms are complied with. The lessor agrees to pay one-eighth part of all minerals, petroleum, gas, potash, or other valuable material, or at the option of the state to pay into the proper fund of the state the market value thereof in cash. The lessor agrees to commence the analysis of the chemicals within six months, the actual construction of buildings or structures, or the beginning of excavations, boring, or drilling within one year, and for a complete test within three years from the execution of the lease, and he shall have the right at any time on the payment of $1 to the lessor to surrender the lease for cancelation.

The state of Nebraska filed a petition of intervention, setting forth that plaintiff's lease was for agricultural and grazing purposes only; that the defendant will only occupy a small portion of the land; that it is willing to deduct a reasonable amount from the rent for damage to the plaintiff on account of the occupation; that potash is now very valuable, and at the close of the war it may be greatly reduced. It joins with defendant in asking for an injunction.

The court found for defendant and intervener, and enjoined plaintiff from interfering with the use or possession of the premises by the defendant for the purpose stated.

LETTON, J.

It was conceded at the argument that the owner of land holds from the center of earth to the sky, and that he may subdivide his estate laterally, conveying the right to the surface only to one individual, and reserving the right to the minerals to himself with power of dis-

posal. It is also conceded that, even without an express reservation in a conveyance of the surface, the grantor impliedly reserves a right to so much of the surface as is necessary for mining operations, or for the purpose of reducing the subsurface estate to possession. These concessions, which seem to state the settled law (27 Cyc. 688; *Marvin v. Brewster Iron Mining Co.*, 55 N. Y. 538, 14 Am. Rep. 322; *Kemmerer v. Midland Oil & Drilling Co.*, 229 Fed. 872; *Chartiers Block Coal Co. v. Mellon*, 152 Pa. St. 286; *Porter v. Mack Mfg. Co.*, 65 W. Va. 636) materially narrow the matters in controversy in this case. Two points alone are left to determine: (1) Was the lease to plaintiff solely an agricultural lease which gave no right to remove minerals? If this point be decided in favor of defendant's contention, (2) has the board of educational lands and funds, without express legislative sanction, power to convey to him the right to enter upon and remove minerals from the lands already leased to plaintiff?

1. The lease to plaintiff is not by its terms an agricultural lease; in other words, the plaintiff has the right to use the premises for any purpose which he desires as long as he does not commit waste or spoliation. Has plaintiff the right to extract and remove the mineral from the land or from the waters standing upon it? 1 Washburn, Real Property (4th ed.) *108, defines waste as follows: "Waste, in short, may be defined to be whatever does a lasting damage to the freehold or inheritance, and tends to the permanent loss of the owner in fee, or to destroy or lessen the value of the inheritance." Any act which tends to diminish the estate and cause a permanent loss to the owner of the fee constitutes waste. *United States Fidelity & Guaranty Co. v. Rieck*, 76 Neb. 300. There can be no question that the opening of a new mine or quarry upon leased premises, the taking of rock or minerals, or sand, or gravel, or oil therefrom, is waste under these definitions. To remove potash is as clearly waste as would

be the removal of the other substances mentioned. Plaintiff therefore has no right to the mineral.

The land in question forms part of that granted to the state by the United States in the enabling act "for the support of common schools." The only provision in the Constitution of 1866 with reference to school lands is as follows: "The university lands, school lands, and all other lands which have been acquired by the territory of Nebraska or which may hereafter be acquired by the state of Nebraska for educational or school purposes, shall not be aliened or sold for a less sum than five dollars per acre." When the state was admitted to the Union and the grant became effective, the legislature, under the Constitution of 1866, made the auditor of state land commissioner, for the purpose of selling and leasing school lands, and by statute he was authorized to dispose of them by sale or lease in the manner prescribed in the act (Gen. St. 1873, ch. 70). In 1875 the present Constitution was adopted. Article VIII relates to education. Section 1 of this article is as follows: "The governor, secretary of state, treasurer, attorney general, and commissioner of public lands and buildings shall, under the direction of the legislature, constitute a board of commissioners, for the sale, leasing, and general management of all lands and funds set apart for educational purposes, and for the investment of school funds, in such manner as may be prescribed by law." The first session of the legislature after the adoption of this Constitution passed an act (Laws 1877, p. 174) "to provide for the registry, sale, leasing and general management of all lands and funds set apart for educational purposes, and for the investment of funds arising from the sale of such lands." This act provided with much detail the manner in which the sale or lease of school lands should be made. In 1897 an act was passed which prohibited the further sale of school lands except in certain specified instances mentioned in the act. Laws 1897, ch. 71. In 1899 a new

and general act was passed covering the whole' subject of the disposal of school lands and providing that "none of the educational lands may hereafter be sold except for school, church, or cemetery purposes as hereinafter provided." Laws 1899, ch. 69. Section 1 of this act provides that the board shall cause the educational lands "to be registered, leased and sold as hereinafter provided, and shall have the general management and control of said lands and make therefor the necessary rules not provided by law."

It is argued that this provision as to rules confers power upon the board to convey the right to remove minerals or oil. The section consists of two divisions and treats of two subjects. The first division provides for the registration, leasing and sale of lands "as hereinafter provided." The quoted clause is a limitation on the powers conferred. The second division of the section is devoted to the subject of the general management and control of the lands. The board "shall have the general management and control of the lands and make *therefor* the necessary rules not provided by law." This language clearly means that the rules are for the regulation of "the general management and control, in so far as not already provided by law." The word "therefor" belongs to the last antecedent, and does not modify that part of the section relating to the leasing and sale of lands. There is a clear distinction between the general management and control of the lands and the power to sell the same. One may be given the management and control of the business of a corporation or of another person, and it would not generally be understood he had the power to sell or dispose of it. Later amendments are not material to this inquiry. Rev. St. 1913, sec. 5855; Laws 1915, ch. 103.

Each of the laws pertaining to the sale on time and leasing of school lands expressly protected the state from waste committed upon the lands in its care, and made its commission a criminal offense. Purchasers

of timber lands before receiving fee-simple title therefor were prohibited from cutting or destroying any timber thereon more than actually necessary for building and repairing of fences and for family use. In 1909 an act was passed allowing the lessee to remove sand and gravel from the land leased after the determination by the commissioner of public lands of the value of the right to do so and the payment by the amount of rental to be paid semiannually in advance for such right. The validity of this act, so far as allowing the value to be fixed by another official than the board, may be doubted. *State v. Bartley,* 40 Neb. 298. However this may be, the legislature evidently considered that the power to control and direct the disposition of school lands, in so far as it had not already been provided for by statute, rested solely in that body. This is a legislative construction of section 1, art. VIII of the Constitution. It is worthy of remark that it has not been shown that, during the term of more than 40 years that has elapsed since the adoption of the Constitution, the right to dispose of school lands of the state otherwise than as provided by statute has ever been asserted by the board. Except for the sale of sand and gravel and the instances mentioned in section 5855, there is no legislative sanction existing for the sale or disposition of any part of the corpus of the estate. The board of educational lands and funds are trustees for the protection and preservation to the people of this state of the lands granted to it for the benefit of the common schools thereof. Their power to lease, sell or dispose of the same only exists in so far as it is directed or permitted by the legislature. Until that body has acted, no power resides in them to dispose of the property. They are agents selected to carry out the legislative will in this regard.

The removal of minerals, whether held in solution upon the land or resting in the soil and subsurface, is the removal of a component part of the real estate itself. The severance changes the character of the property, but it remains real estate until detached.

In *Williamson v. Jones,* 39 W. Va. 231, 257, 25 L. R. A. 222, upon the question whether mineral oil in place is part of the realty, it was held that it was, and that its removal constituted waste, the court saying:

"The courts of the state of Pennsylvania have had many cases, some involving property rights of great value, in which the point arose, and have examined the question thoroughly, considered it with great care with reference to its being property where it is found, and its character and nature as property in general. 'Oil is a mineral, and, being a mineral, is part of the realty. *Funk v. Haldeman,* 53 Pa. St. 229. In this it is like coal or any other natural product which *in situ* forms part of the land. It may become, by serverance, personalty, or there may be a right to use or take it, originating in custom or prescription, as the right of a life tenant to work open mines, or to use timber for repairing buildings or fences on a farm, or for fire-bote. Nevertheless, whenever conveyance is made of it, whether that conveyance be called a lease or deed, it is, in effect, the grant of a part of the corpus of the estate, and not of a mere incorporeal right. Not infrequently the oil forms by far the most valuable part of the estate.' *Appeal of Stoughton,* 88 Pa. St. 198; *Westmoreland & Cambria Natural Gas. Co. v. DeWitt,* 130 Pa. St. 235, 5 L. R. A. 731; *Hague v. Wheeler,* 157 Pa. St. 324, 22 L. R. A. 141. As to ownership *in situ* of subterranean waters, see *Collins v. Chartiers Valley Gas Co.,* 131 Pa. St. 143, 6 L. R. A. 280. As to ownership by different ones of the surface, coal, iron ore, oil, gas, etc., see *Chartiers Block Coal Co. v. Mellon,* 152 Pa. St. 286, 293, 18 L. R. A. 702; *Wheatley v. Baugh,* 25 Pa. St. 528, 64 Am. Dec. 721, where there is a full note on the subject: 'Where percolating water is found, it belongs to the realty where it is found.' *Chasemore v. Richards,* 7 H. L. Cas. (Eng.)* 349. In *Findlay v. Smith,* 6 Munf. (Va.) 134, 8 Am. Dec. 733, subterranean

salt water is treated as part of the inheritance of which waste could be committed.'' See *People v. Bell,* 237 Ill. 332, 19 L. R. A. n. s. 746; *Hyatt v. ·Vincennes Nat. Bank,* 113 U. S. 408.

Defendant insists that his lease is a chattel real, and that such instruments or the rights given thereby are personal property, and hence do not constitute a lease of the land or a sale of any part of it. A number of decisions are cited in support of this proposition. In a number of states chattels real are personal property, but in this state the statute has settled the law in that respect. Rev. St. 1913, sec. 6187. Under section 6187 in the chapter of the statute relating to real property, the term ''real estate'' is construed ''as coextensive in meaning with lands, tenements and hereditaments and as embracing all chattels real, except leases for a term not exceeding one year.'' By section 6188 a purchaser is construed ''to embrace every person to whom any. real estate or interest therein shall be conveyed for a valuable consideration, and also any assignee of a mortgage or lease.'' By section 6189 the term ''deed,'' as used in this chapter, embraces every instrument in writing by which any real estate or interest therein is created, or assigned. In the statute relating to revenue we find the following: ''The terms 'real property,' 'real estate,' and 'lands,' when used in this chapter, except as otherwise provided, shall include city and village lots and all other lands and all buildings, fixtures, improvements, mines, minerals, quarries, mineral-springs and wells, oil and gas rights, and privileges pertaining thereto.'' Rev. St. 1913, sec. 6289.

Whatever view may be taken in some states with reference to the nature and character of such an instrument and of the right to remove minerals from the land, the legislative definition prevails, and the property must be considered as real estate. Without express authority from the legislature, the board has no power

to execute such a lease as the one under consideration.

It is possible, under the war conditions now existing, that, unless the legislature promptly confers upon the board the right and authority to dispose of these minerals, the school fund of the state may lose a large amount of money and the interests of the state suffer, but as said by JUDGE HOLCOMB in *State v. Tanner*, 73 Neb. 104, 120: "This hardship cannot rightfully be obviated by the violation of a sacred trust imposed upon a state and those chosen to administer its affairs relating to the lands and funds belonging to the common schools, which should ever be kept inviolate and used and disposed of only in the execution of the trust. While the legislature no doubt may grant to the defendant, if in its wisdom it sees fit so to do, some measure of relief, in so doing due regard must be had for the greater interests of the state, which, if observed, require the faithful administration of affairs pertaining to the management and disposition of the school lands and funds as contemplated by the constitutional provisions."

What has been said is not in any way in criticism of the well-intended action of the board in attempting to preserve to the state the values which may perhaps temporarily inhere in these minerals. We merely decide that legislative action is necessary before the power is vested in them so to act.

The judgment of the district court is reversed. The facts being undisputed, the plaintiff is entitled to the use and occupation of the land until the legislature sees fit to confer upon the board power to vest others with the right to enter upon the lands and remove the minerals therefrom.

JUDGMENT ACCORDINGLY.

MORRISSEY, C. J., took no part in this decision.