JAMES R. WHEELOCK, APPELLEE, V. OPAL HEATH,
ET AL., APPELLANTS.
MANNING OO RANCHES, INC., APPELLEE, V. OPAL HEATH
ET AL., APPELLANTS.

272 N. W. 2d 768

Filed December 13, 1978. Nos. 42118, 42119.

Martin, Mattoon & Matzke, for appellants.

Reddish, Curtiss & Moravek, and Thomas A. Danehey, for appellees Wheelock and Manning OO Ranches, Inc.

Heard before SPENCER, C. J., PRO TEM., BOSLAUGH, McCOWN, CLINTON, BRODKEY, and WHITE, JJ., and KUNS, Retired District Judge.

Spencer, C. J., Pro Tem.

These actions are brought under sections 57-228 through 57-231, R. R. S. 1943, to extinguish the severed mineral interests owned of record by the defendants, and to vest the title to them in the plaintiffs. The trial court canceled the interests and vested title in plaintiffs. The question presented is the constitutionality of the act as retroactively applied against these defendants. We reverse.

The statutory provisions pertinent herein, all of which became effective in 1967, are as follows:

Section 57-228, R. R. S. 1943: "Any owner or owners of the surface of real estate from which a mineral interest has been severed, on behalf of himself and any other owners of such interest in the surface, may sue in equity in the county where such real estate, or some part thereof, is located, praying for the termination and extinguishment of such severed mineral interest and cancellation of the same of record, naming as parties defendant therein all persons having or appearing to have any interest in such severed mineral interest, and if such parties defendant are not known and cannot be ascertained, they may be proceeded against as unknown defendants under the provisions of Chapter 25, article 3."

Section 57-229, R. R. S. 1943: "A severed mineral interest shall be abandoned unless the record owner of such mineral interest has within the twenty-three years immediately prior to the filing of the action provided for in sections 57-228 to 57-231, exercised publicly the right of ownership by (1) acquiring, selling, leasing, pooling, utilizing, mortgaging, encumbering, or transferring such interest or any part thereof by an instrument which is properly recorded in the county where the land from which such interest was severed is located; or (2) drilling or mining for, removing, producing, or withdrawing minerals from under the lands or using the geological formations, or spaces or cavities below the

surface of the lands for any purpose consistent with the rights conveyed or reserved in the deed or other instrument which creates the severed mineral interest; or (3) recording a verified claim of interest in the county where the lands from which such interest is severed are located. Such a claim of interest shall describe the land and the nature of the interest claimed, shall properly identify the deed or other instrument under which the interest is claimed, shall give the name and address of the person or persons claiming the interest, and shall state that such person or persons claim the interest and do not intend to abandon the same. The interest of any such owner shall be extended for a period of twenty-three years from the date of any such acts; *Provided*, that the provisions of this section shall not apply to mineral interests of which the State of Nebraska or any of its political subdivisions is the record owner."

Section 57-230, R. R. S. 1943: "If the court shall find that the severed mineral interest has been abandoned, it shall enter judgment terminating and extinguishing it, canceling it of record, and vesting the title thereto in the owner or owners of the interest in the surface from which it was originally severed in the proportions in which they own such interest in the surface."

Section 57-231, R. R. S. 1943: "In any action filed within two years after October 23, 1967, the owner of a severed mineral interest may enter his appearance and assert his interest therein, and he shall be deemed thereby to have timely and publicly exercised his right of ownership."

The parties stipulated that case No. 42118 and case No. 42119 should be consolidated for the purpose of submitting briefs and for oral argument. The only basic difference between the two cases is the real estate involved.

On May 29, 1950, George S. Manning, for valuable

consideration, executed and delivered a mineral deed to R. W. Slemaker, conveying an undivided one-half interest in and to all oil, gas, and minerals that may be produced from over 3,000 acres of land in Grant County, Nebraska. Said mineral deed warranted the title of said mineral estate forever to the grantee, his heirs, successors, executors, personal representatives, and assigns.

R. W. Slemaker and wife for valuable consideration executed and delivered mineral deeds for fractional interests to the respective defendants herein, conveying undivided interests in and to all oil, gas, and minerals that may be produced from said land. Said mineral deed warranted the title to said mineral estates.

The plaintiffs, appellees herein, James R. Wheelock and Manning OO Ranches, Inc., subsequently acquired title to the surface and one-half of the oil, gas, and minerals in different tracts of real estate through mense conveyances of record from the original grantor, George S. Manning. The appellees, successors in interest to the original grantor, have now brought these actions to terminate and extinguish the mineral interests owned by the defendants-appellants.

There is no factual dispute in the cases. Plaintiffs are the surface owners of the real estate involved and they also own an undivided one-half interest in all the oil, gas, and other minerals underlying their respective tracts of land. Defendants acquired their mineral interests more than 23 years prior to the filing of the actions and had not taken any of the steps required by section 57-229, R. R. S. 1943, to preserve their interests.

We first meet the question as to whether the act was intended to apply retrospectively. A legislative act will operate only prospectively and not retrospectively, unless the legislative intent and purpose that it should operate retrospectively is clearly dis-

closed. Retired City Civ. Emp. Club of Omaha v. City of Omaha Emp. Sys., 199 Neb. 507, 260 N. W. 2d 472 (1977). It is obvious the Nebraska act was clearly intended to apply retrospectively, because it allows actions to be filed immediately after its effective date. Section 57-231, R. R. S. 1943, provides: "In any action filed within two years after October 23, 1967 * * *." The act became effective October 23, 1967.

In considering the constitutionality of the retrospective application of the act, it is necessary to define the nature of the title to a severed mineral interest. As stated by E. Kuntz in Old and New Solutions to the Problem of the Outstanding Undeveloped Mineral Interest, 22 Oil & Gas Inst. 81, 97 (1971): "The concept (of abandonment in the statutes of Illinois, Michigan, and Nebraska) is necessarily predicated upon an assumption by the legislature that the nature of the title is such that it is capable of being abandoned. Whether or not this assumption is a valid one must be determined by the judicial process. Such determination, in turn, will require an appraisal or reappraisal of the basic theory of ownership adopted in the state and an appraisal or reappraisal of the basic legal principles regarding abandonment of title to real property."

In Farmers Canal Co. v. Frank, 72 Neb. 136, 100 N. W. 286 (1904), the rule is stated that for abandonment to occur there must be both a relinquishment of possession or nonuser of the right granted together with the intention to abandon. It is further stated in that opinion that mere absence from and nonuser of the property do not provide an intention to abandon, although conduct of that kind may continue unexplained for such length of time as not to be consistent with any other hypothesis. The statute, in effect, provides that failure to publicly exercise the right of ownership to a severed mineral interest for a period of 23 years conclusively establishes the

intention to abandon. At common law, legal title to land could not be lost by abandonment. See Tate v. Biggs, 89 Neb. 195, 130 N. W. 1053 (1911).

The general rule is stated in 54 Am. Jur. 2d, Mines and Minerals, § 116, p. 298, as follows: "When by appropriate conveyance the mineral estate in lands is severed from the surface, separate and distinct estates are thereby created which are held by separate and distinct titles, and each is a freehold estate of inheritance subject to the laws of descent, devise, and conveyance. The owners of the two estates do not become tenants in common, although, of course, the conveyance may be so worded as to constitute the purchasers of either estate such tenants.

"A grantee of the minerals underlying the land becomes the owner of them; his interest is not a mere mining privilege. The minerals thus severed become a separate corporeal hereditament. Their ownership is attended with all the attributes and incidents peculiar to ownership of land, and they may be embraced in the terms 'land' or 'real property' in a subsequent conveyance."

There are numerous indications under Nebraska law that mineral interests are vested property rights. In Pfeifer v. Ableidinger, 166 Neb. 464, 89 N. W. 2d 568 (1958), and in Stoller v. State, 171 Neb. 93, 105 N. W. 2d 852 (1960), this court held that mineral interests in land are subject to the protection of the due process clause. Section 77-103, R. R. S. 1943, provides, so far as material herein: "The terms real property, real estate and lands shall include * * * minerals * * * mineral springs and wells, oil and gas wells, * * *." In Fawn Lake Ranch Co. v. Cumbow, 102 Neb. 288, 167 N. W. 75 (1918), this court said: "The removal of minerals, whether held in solution upon the land or resting in the soil and subsurface, is the removal of a component part of the real estate itself. The severance changes the character of the property, but it remains real estate until

detached." See, also, Conway v. County of Adams, 172 Neb. 94, 108 N. W. 2d 637 (1961). Under section 25-2170, R. R. S. 1943, mineral interests are subject to partition.

In Elrod v. Heirs, Devisees, etc., 156 Neb. 269, 55 N. W. 2d 673 (1952), Hattie Gifford conveyed a section of land "subject to and reserving to the grantor herein personally an undivided one-half (½) interest in and to all gas, oil or other minerals in on or under said land herein conveyed." The appellants claimed that the reservation of the mineral estate was personal to the grantor and created only a life estate which terminated at grantor's death. This court in that case held "The conclusion is inescapable that Hattie Gifford by the terms of her deed to appellants retained a fee simple estate in one-half of the gas, oil, and other minerals in the land conveyed." It may be argued, however, that this case is not dispositive since the term "fee simple" merely indicated that the grantor retained an estate of inheritance rather than indicating the possessory or corporeal nature of the interest. We incline to the view, however, that when a mineral interest is conveyed, unless the instrument provides otherwise, an estate in fee simple in land or a corporeal hereditament is created.

In Comment, Abandonment of Mineral Rights, 21 Stanford L. Rev. 1227 (1969), it is stated: "Interests in land, or hereditaments, have long been categorized by the common law for certain purposes as either 'corporeal' or 'incorporeal.' For example, fee-simple ownership of a plot of land is considered ownership of a corporeal hereditament; the owner is deemed to 'own' a corporeal substance — the land. On the other hand, an easement is an example of an incorporeal hereditament. The holder of an easement does not 'own' any tangible substance; rather, he 'owns' the right to use portions of another's land for passage. * * *

"While incorporeal hereditaments, such as easements, licenses, mining claims, and franchises, have uniformly been held subject to abandonment, a firmly established common law rule provides that a corporeal interest in land cannot be abandoned. Underlying this rule is the seldom-articulated but ancient policy disfavoring voids or gaps in the chain of title to land."

In Fawn Lake Ranch Co. v. Cumbow, *supra*, this court said: "In Williamson v. Jones, 39 W. Va. 231, 257, 25 L. R. A. 222, upon the question whether mineral oil in place is part of the realty, it was held that it was, and that its removal constituted waste, the court saying:

" 'The courts of the state of Pennsylvania have had many cases, some involving property rights of great value, in which the point arose, and have examined the question thoroughly, considered it with great care with reference to its being property where it is found, and its character and nature as property in general. "Oil is a mineral, and, being a mineral, is part of the realty. Funk v. Haldeman, 53 Pa. St. 229. In this it is like coal or any other natural product which *in situ* forms part of the land. It may become, by severance, personalty, or there may be a right to use or take it, originating in custom or prescription, as the right of a life tenant to work open mines, or to use timber for repairing buildings or fences on a farm, or for fire-bote. Nevertheless, whenever conveyance is made of it, whether that conveyance be called a lease or deed, it is, in effect, the grant of a part of the corpus of the estate, and not of a mere incorporeal right. Not infrequently the oil forms by far the most valuable part of the estate." ' "

Appellees direct our attention to Hiddleston v. Nebraska Jewish Education Soc., 186 Neb. 786, 186 N. W. 2d 904 (1971), in which we held: "Constitutionality of a retroactive statute under the contract and

due process clauses of the United States and the Nebraska Constitutions generally depends upon reasonableness. Relevant factors are the nature and strength of the public interest, the extent of modification of the asserted preenactment right, and the nature of the right altered by statute." In that case the extinguishment of possibilities of reverter after 30 years was held to be constitutional even though the statute operated retrospectively. The court there stated: "The value of possibilities of reverters as a class has been slight."

There is a vast difference between possibilities of reverter and the outright severance of a mineral interest for a consideration. It cannot be said that the value of mineral interests as a class has been slight. As suggested before, in the quotation from Fawn Lake Ranch Co. v. Cumbow, *supra*, the mineral interest may form the most valuable part of the land.

To date, the exact question involved herein has been considered by only one intermediate appellate court. In Bickel v. Fairchild, 83 Mich. App. 467, 268 N. W. 2d 881 (1978), the Michigan Dormant Mineral Act was declared unconstitutional. The act provided that a severed oil and gas interest would be deemed abandoned unless during any 20-year period the holder of the interest had secured a drilling permit, produced oil or gas, transferred the interest, used the property for underground gas storage, or recorded a notice of interest. A 3-year grace period was provided by the act, which became effective in 1963, for persons to record notice to preserve their interest.

The observations of that court are pertinent herein: "We agree with appellants that in our energy short and energy conscious generation, the legislative act has a real public purpose -- to encourage exploration and drilling of new gas and oil wells. Some oil and gas rights, with the passage of time,

have become fractionalized and distributed among numerous owners, many who are no longer locatable and perhaps even deceased. No oil company will spend the time and expense of tracing all the possible owners down in order to do expensive exploratory drilling with no guarantee of favorable results.

"On the other hand, the gas and oil interest holders have a property right given them by private publicly recorded contracts. These rights are subject to being sold, mortgaged, leased, devised or inherited just as the surface rights are. Whose rights are paramount, the state's or the individual's?"

Appellees refer to a Virginia case, Love v. Lynchburg National Bank & Trust Co., 205 Va. 860, 140 S. E. 2d 650 (1965), as supporting their position. It is true, in that case a statute extinguishing mineral interests was held to be constitutional. That case, however, is distinguishable. There, the statute merely created a presumption there were no minerals in the land if the claim was not exercised for 35 years. Further, the interest holder was permitted 6 months after being sued to discover minerals. The Virginia court determined the statute did not operate to divest any property rights. It merely provided a rule of evidence. If there were no minerals, there could be no mineral interest. The court also held the statute did not constitute special legislation, stating: "The legislation is general and impartial in its operation on all persons and land similarly situated."

In the case before us, the statute deprives known property owners of their subsurface rights without notice, hearing, or compensation. The statute was passed in 1967. It declared the mineral rights shall have been abandoned unless the record owner had publicly exercised ownership rights, as defined in the statute, within 23 years immediately prior to the filing of an action to cancel the severed mineral in-

terest of record. No notice of any nature was given to the record owner of a mineral interest.

A limited statute of limitations was provided. In any action filed within 2 years after October 23, 1967, the owner of a severed mineral interest could enter an appearance and assert his interest. He would then be deemed to have timely and publicly exercised his right of ownership. In other words, the record title owners were required within 2 years from October 23, 1967, to take some affirmative action or lose their property. In all actions filed after October 23, 1969, if no affirmative action had been taken within 23 years, the severed interest is to be considered abandoned. The owner does not have any remedy. The statute, insofar as it attempts to operate retroactively, is unconstitutional as violative of the due process and contract clauses of the United States and the Nebraska Constitutions.

The judgment of the District Court is reversed and the cause remanded with directions to find sections 57-228, 57-229, 57-230, and 57-231, R. R. S. 1943, unconstitutional insofar as those statutes may be interpreted to be retroactive in their operation.

REVERSED AND REMANDED WITH DIRECTIONS.