UNITED STATES of America, Plaintiff,

v.

UNITED PENN BANK and Heavy Media, Inc., Defendants.

Civ. A. No. 81–0310.

United States District Court,
M.D. Pennsylvania.

July 17, 1984.

Gordon A.D. Zubrod, Asst. U.S. Atty., Harrisburg, Pa., Silvia Sepulveda-Hambor, Anthony C. Liotta, Deputy Asst. Attys. Gen., Land & Natural Resources Div., Washington, D.C., Robert Miller, Phillip J. North, Office of Field Solicitor, Dept. of Interior, Charleston, W.Va., Alfred T. Ghiorzi, Larry Martin Corcoran, Frank McAnear, Dept. of Land & Natural Resources, Benjamin Franklin Station, Washington, D.C., Stuart Sanderson, Dept. of Interior, Office of Solicitor, Surface Mining, Washington, D.C., for plaintiff.

Arthur L. Piccone, Paula Garrety, Wilkes-Barre, Pa., for United Penn Bank.

Joseph C. Gilbus, Wilkes-Barre, Pa., Martin W. Matzen, Dirk D. Snel, U.S. Dept. of Justice, Land & Natural Resources Div., Appellate Section, Washington, D.C., for Durkin, Barbara Coal Co., and Marchessi.

MEMORANDUM

CALDWELL, District Judge.

This is a declaratory judgment proceeding in which the current issue is the extent

of the interest of the United Penn Bank in certain real estate situate in Luzerne County. Plaintiff is, and since 1980 has been, engaged in attempting to extinguish an underground mine fire on the land in question. The work has involved the removal of large quantities of coal, some of which has been sold. The Bank has asserted a claim of ownership in part of the premises, and seeks to recover the proceeds arising from the sale of the coal that has been sold, and establish its right to the coal that is stockpiled or in place on the premises.

The plaintiff has filed a motion to dismiss the Bank as a party to this proceeding, alleging that it has no ownership or other interest in the mineral estate of the premises and lacks standing to continue as a litigant. The Bank, on the other hand, has filed a motion for partial summary judgment under F.R.Civ.P. 56(b), in which it asks us to determine that it has title in and to the coal underlying the land which is the subject of this proceeding. Both of these motions will be resolved in the course of our discussion.

The Bank acquired its interest in the property through a mortgage foreclosure against Barbara Coal Company, and whether the Bank is the owner of the coal underlying the premises depends upon the extent of the estate that it acquired when it foreclosed and received a deed from the sheriff. Plaintiff contends that Barbara Coal Company mortgaged only the surface estate in the premise and that only the surface estate was acquired by United Penn Bank as a result of the foreclosure on the mortgage.

■■■ Three estates in land are recognized in Pennsylvania: surface, minerals, and the right of support. *Captline v. County of Allegheny*, 74 Pa.Commw. 85, 459 A.2d 1298, 1301 (1983), *opp. pending; Pennsylvania Bank & T. Co., Youngsville*

*Br. v. Dickey*, 232 Pa.Super. 224, 335 A.2d 483, 485–86 (1975); *Stewart v. Chernicky*, 439 Pa. 43, 266 A.2d 259, 261 n. I (1970). When a freehold estate in coal is separated from ownership of the surface, the mineral estate is said to be severed. Severance is effected either by a separate conveyance of the coal by the surface owner or by an exception or reservation of the coal estate from a conveyance of the surface. The coal estate is then considered a separate and independent estate in real property which is held by separate and distinct title. Liens against the surface cannot be levied against the mineral estate. *Coal Law & Regulation*, Theiss, et al. vol. 4, § 80.01[3], 80–8; *Wheelock v. Heath*, 201 Neb. 835, 272 N.W.2d 768, 771 (1978). Once they have been severed from the surface, estates beneath the land can also be conveyed separately without any effect on the surface. *Pennsylvania Bank & T. Co., Youngsville Br., supra*, 335 A.2d at 485–86; *Delaware and Hudson Canal Co. v. Hughes*, 183 Pa. 66, 38 A. 568 (1897); *Moreland v. H.C. Frick Coke Co.*, 170 Pa. 33, 32 A. 634 (1895). Therefore, it is possible to have a situation where any of the three estates in land may be owned by persons different from the ones owning the other estates.

After reviewing the chain of title by which the Bank acquired its interest in the premises, and having heard the testimony concerning the chain of title, we have concluded that the surface and mineral estates in the premises have been severed and that the Bank owns only the surface estate in the property.

Prior to 1971, the property involved in this proceeding was owned by Blue Coal Corporation. Blue Coal conveyed numerous tracts to Barbara Coal Company, Inc. by quitclaim deed dated November 15, 1971 (plaintiff's exhibit GG, item 12; defendant's exhibit 103). This deed was restricted to *"all of the surface of all of the following described parcels...."* (emphasis added).[1]

---

**1.** The deed recites that the property conveyed by Blue Coal to Barbara Coal had been acquired by

Blue Coal from two sources. The first was a deed from Hudson Coal Co. to Blue Coal, dated

After describing fourteen separate parcels of real estate the quitclaim deed included the following provision:

"Grantor (Blue Coal) also quitclaims unto said Grantee (Barbara Coal), ... all coal now remaining in place ... owned by the Grantor, in, under and upon the surface above described."

There can be no doubt that the parties to this transaction treated the surface estate and the mineral estate separately, or that the two had been severed long before the conveyance.

One and a half years later, on May 2, 1973, Blue Coal executed a second quitclaim deed to Barbara Coal Company, Inc., which was recorded on May 7, 1973 (exhibit E). This deed was designed to correct certain conveyances of the surface made in the deed of November 15, 1971. The deed recited:

"This is a deed of correction, the intent and purpose of which is to more specifically remise, release and quitclaim all of the Larksville Borough portion of the *surface* remaining in Grantor as of November 15, 1971 and referred to as Parcel No. 1 in the deed from Blue Coal Corporation to Barbara Coal Company, Inc., dated November 15, 1971 and recorded as aforesaid." (emphasis added)

This deed also contained a separate provision of quitclaim as to Blue Coal's interest in the coal underlying the tract.

It is obvious that when Barbara Coal Co. acquired title, the surface and mineral estates were severed and were conveyed separately. Based on these deeds, and the earlier ones in the chain of title, it would also be apparent to any purchaser or mortgagee that any future conveyance of the surface would not include the mineral estate. Indeed, the defendant's own expert, Robert A. Kley, testified that the coal and

surface estates for lots one and two had been severed prior to 1944 when the properties were conveyed by Luzerne County to Charles B. Waller. (N.T. Vol. 2, p. 32). On cross-examination, Mr. Kley continued as follows:

Q. Do you recall saying that the surface and minerals to lots 1 and 2 have been severed prior to 1940 and continued to be severed at that time?

A. I believe I used the word segregated; you used the word severed.

Q. What do you mean by segregated?

A. In that both estates were in Kingston Coal Company although they came to Kingston through separate chains and were segregated by Kingston as to minerals and as to surface.

N.T. vol. 3, pp. 3–4.

The mortgage given by Barbara Coal Company to the United Penn Bank was executed on May 13, 1974 and recorded June 18, 1974 (defendant's exhibit 102). The mortgage provided that to secure the loan the mortgagor (Barbara Coal) transferred or pledged to the mortgagee (The Bank), "all of the surface of the following described parcels...." Most of the recitals which follow the descriptions use language such as, "Being a portion of the surface...." In initiating the foreclosure proceeding (plaintiff's exhibit GG, item 3) the Bank, in paragraph 18 of its complaint, identified the premises subject to foreclosure and sale by reference to an exhibit. This exhibit describes the various parcels to be sold as "All of the surface of all of the following described parcels...." The Bank was the successful bidder at the foreclosure sale and the deed from the sheriff to the Bank, by which the Bank obtained title, describes the various parcels conveyed to the Bank as, "All of the surface of all of the following described parcels...." (defendant's exhibit 101).

November 21, 1960 (Deed book 1470–24), and conveyed "all of the surface, and coal now remaining in place...." The second was a quit claim deed from Glen Alden Corp., dated Febru-

ary 18, 1966, which conveyed whatever real estate interests Glen Alden owned in six counties in Pennsylvania (defendant exhibit 104 and plaintiff's exhibit GG, item 14).

A mortgagee can acquire in foreclosure only the interest encumbered to secure his loan. *See Meco Realty Co. v. Burns,* 414 Pa. 495, 497–98, 200 A.2d 869, 871 (1964). The nature and extent of the property or the estate encumbered in a mortgage depends upon the intention of the parties. In ascertaining the parties' intent with respect to a deed it has been held in *U.S. Steel Corp. v. Hoge,* 304 Pa.Super.Ct. 182, 450 A.2d 162 (1982) that:

> [The] rules [of construction] require that the instrument be construed to give effect to the intention of the parties to that instrument. The rules of construction further require that a deed should be considered in its entirety, giving effect to all its terms and provisions, and reading the language in light of conditions existing at the time of its execution. If the language of the deed prove ambiguous then it will be interpreted most strongly against the drafter of the deed. However, this latter rule of construction may not be employed as some talismanic solution or magic formula for the construction of ambiguous language or resolution of the dispute since, first and foremost, we must always keep an eye to the parties' intentions.

Id. 450 A.2d at 166. The same rules of construction apply to mortgages. *See In re Riddlesburg Min. Co.,* 122 F.Supp. 560 (W.D.Pa.1954), modified 224 F.2d 834 (3d Cir.1955).

In a case such as this the intention of the parties must be inferred and determined from all known facts and circumstances, including reference to the documents in the chain of title. We think it abundantly clear that neither the mortgagor, Barbara Coal Co., or the mortgagee, United Penn Bank, intended the mortgage to cover the mineral estate underlying the surface. First, the descriptions in the chain of title continually speak of a conveyance of the surface. Whereas the underlying deeds speak separately of the coal or mineral rights, the mortgage refers only to the surface estate.[2] An examination of the title reveals uncertainty on the part of the numerous owners about the existence and extent of the mineral estate being passed by the various deeds, and perhaps explains why the surface had been consistently conveyed separately from the mineral estate.

As our previous discussion has established, there is no legal basis for the Bank's contention that it "succeeded" to the ownership of the coal because it acquired the land.[3] The estate in any minerals owned by Barbara Coal Company had been severed and was not included in the mortgage, which specifically provided that the only estate encumbered was the surface estate.

The Bank argues, however, that, even if the coal estate was severed from the surface at some point during the chain of title, the two estates became reunited when Bar-

---

**2.** One indication of the Bank's intention when the mortgage was executed is revealed in a letter from counsel for the Bank, dated July 22, 1980, directed to the government's counsel. The letter discusses the Bank's then pending foreclosure proceeding, and its reluctance to complete foreclosure because of the possibility that *as owner* of the property it might incur a liability in connection with the cost of extinguishing the underground fire:

> "This pretty much is the problem which the Bank has. We wish to proceed [with foreclosure], but under no circumstances do we wish to be saddled with any costs of the extinguishment of the fire...."

> "As I indicated to you and you will note in the description of the mortgage which is at-

tached to my Complaint and on page 2, *you will further see that all that the Bank interest attaches to is the surface of lands, and not the coal rights."* (plaintiff's exhibit 613, emphasis supplied)

**3.** The Bank's theory that it "succeeded" to the ownership of the coal was the only ground advanced when it first claimed an interest in the coal. In writing to the government attorney on

February 4, 1981, after foreclosure had occurred, counsel said:

> "... it is now the position of the United Penn Bank that as the owner of the land, it succeeds to whatever interest the Barbara Coal Company had [in the mineral estate]." (plaintiff's exhibit 630; defendant's exhibit 220)

bara Coal attained title to both. Because there was no express reservation or exception of the coal in the mortgage, the Bank continues, it is presumed that the coal passes with the surface. Although there is some decisional law to support this concept of merger of estates, *See, e.g., Henley v. United States,* 396 F.2d 956, 184 Ct.Cl. 315 (1968), we have found no law in this jurisdiction to suggest that estates are reunited if they continue to be treated as separate by the parties. Here, it is clear to us that the parties intended that the estates be treated separately and were well aware that a reference to the "surface" of land implied no right to coal as well. Further, although a conveyance of land is generally presumed to convey minerals unless expressly excepted, we are not certain that this presumption applies to mortgages as well. Where an estate is given *as security* it seems to us that it may be adequate for the mortgagor simply to name the particular estate encumbered (here, by a term of art, i.e. surface) rather than to reserve expressly other estates which are not pledged. We note in this regard that certain distinctions have been drawn in Pennsylvania between conveyances and mortgages as they relate to severed minerals. *See* 52 P.S. § 1551.

■ The Bank also argues that the habendum clause to the mortgage encompasses underlying coal, if nothing else does. The habendum clause reads as follows:

To have and to hold said real estate and property, heraditaments and premises hereby granted, or mentioned and intended so to be, with the appurtenances, unto said Mortgagee to and for the only proper use and behoof of said Mortgagee forever.

As the parties have noted

A habendum clause may enlarge, expand, qualify or vary the premises of the deed itself; the purpose of a habendum clause is to determine what estate passes.

*Yuscavage v. Hamlin,* 391 Pa. 13, 137 A.2d 242 (1958); *Ontelaunee v. Rothermel,* 139 Pa.Super. 44, 11 A.2d 543 (1939); *Bedford Lodge v. Lentz,* 194 Pa. 399, 45 A. 378, 379 (1900). Here, however, the habendum clause does not enlarge the granting clause to include the coal estate. Although the habendum speaks of appurtenances, coal is *not* an appurtenance of the surface, it is a *separate estate.* Hence, the habendum clause here does not benefit the bank as it suggests.

Subsequent to the hearings in this case, a petition for inclusion of additional evidence in the record was filed by defendant and opposed by plaintiff. Defendant desires to admit into evidence two agreements between James J. Durkin, Sr., James J. Durkin, Jr., Anna Jean Durkin and Edward Durkin on one hand, and United Penn Bank on the other dated December 30, 1980, and June 30, 1981. The Bank also seeks to admit an assignment from James J. Durkin, Jr., Trustee in Liquidation for Barbara Coal Company, Inc. to United Penn Bank, dated October 9, 1980. We are unable to explain why these documents, if relevant, were not offered at the hearing in this matter. As we read the Bank's brief, the only purpose related to our present discussion for which these documents are offered is to "show that Barbara Coal intended to mortgage to United Penn Bank and recognized the transfer of title of that coal to United Penn Bank upon foreclosure on the mortgage." [4] Although we will not permit this belated entry of evidence (which apparently had never been revealed to the plaintiff), in and of themselves, these documents, executed six years subsequent to the mortgage, would appear to be totally speculative insofar as they bear upon the

---

**4.** The petition for inclusion alleges that they relate to an assertion concerning a defect in the foreclosure procedure. In our opinion plaintiff lacks standing to raise this issue and we do not address it.

intentions of the parties to the mortgage in 1974.[5]

Having determined that United Penn Bank acquired no interest in the mineral estate beneath the land via mortgage foreclosure, we conclude this proceeding has no further useful purpose and should be terminated.[6] The action was filed originally to declare or authorize the deposit of funds, arising from the sale of coal, in the Abandoned Mine Reclamation Fund, and the tortured course of this proceeding has somehow led us to decide the narrow matter settled herein. However, we deem this declaratory judgment proceeding, in which the government is the plaintiff/petitioner, an inappropriate vehicle for resolving any other claims that may exist or arise from the government's activities on the premises.

Concerning any potential claim of the government for enhancing the value of the premises, the Surface Mining Control and Reclamation Act provides a procedure for filing a lien against the premises after completion of the project [30 U.S.C. § 1238]. The Act also contemplates that an aggrieved owner of any interest in such premises shall proceed by filing a claim for damages by virtue of the government's entry [30 U.S.C. § 1240(b)]. These provisions provide the remedies for claims arising from the government's activities and this action will be terminated upon the entry of the order which accompanies this discussion.

### ORDER

AND NOW, July 17, 1984, the motion of the plaintiff to dismiss United Penn Bank as a party in this declaratory judgment proceeding is granted. The cross-motion of United Penn Bank for partial summary judgment, and its petition for inclusion of additional evidence, filed March 28, 1984, are denied.

5. "James J. Durkin" signed the mortgage as President of Barbara Coal. We assume he is one of the two James Durkins named in the above documents.

The Clerk of Court is directed to close this file.

6. The government has settled the claim of Heavy Media, Inc.